**DICKINSON WRIGHT PLLC**
JOHN L. KRIEGER, ESQ.
Nevada Bar No. 6023
GREGORY R. GEMIGNANI, ESQ.
Nevada Bar No. 7346
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169
Tel: (702) 550-4439
Fax: (844) 670-6009
Email: jkrieger@dickinsonwright.com
Email: ggemignani@dickinsonwright.com

**LOOPER GOODWINE P.C.**
STEPHEN W. ABBOTT, ESQ. (Admitted *pro hac vice*)
1300 Post Oak Blvd., Suite 750
Houston, Texas 77056
Tel: (713) 335-8883
Fax: (713) 335-8601
Email: sabbott@loopergoodwine.com

*Attorneys for Plaintiff*
*Life Root, LLC*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| LIFE ROOT, LLC, a Delaware limited liability company,<br><br>*Plaintiff,*<br><br>v.<br><br>ALTERAEX, LLC (f/k/a KANNA21, LLC), a Texas limited liability company, PURE BALANCE VENTURES, LLC D/B/A PURE7, a Texas limited liability company, and MARK WILLIS, an individual,<br><br>*Defendants*. | CASE NO.: 2:25-cv-01325-MMD-MDC<br><br><br>**ORDER GRANTING STIPULATION TO AMEND COMPLAINT UNDER FRCP 15(a)(2)** |

Plaintiff LIFE ROOT, LLC ("Life Root") and Defendants ALTERAEX, LLC (f/k/a KANNA21, LLC), PURE BALANCE VENTURES, LLC D/B/A PURE7, and MARK WILLIS ("Defendants," collectively with Life Root, the "Parties"), by and through their respective counsel

1

of record, hereby notify the Court that Life Root seeks leave to amend its First Amended Complaint and that Defendants consent to the amendment.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



Pursuant to Fed. R. Civ. P. 15(a)(2), the parties stipulate to allow Life Root to file its First Amended Complaint. A copy of the proposed First Amended Complaint is attached as Exhibit 1 in compliance with LR 15-1.

**IT IS SO AGREED AND STIPULATED:**

DATED this 2nd day of February 2026.    DATED this 2nd day of February 2026.

**DICKINSON WRIGHT PLLC**    **LELAND SHAFFER LLP**

*/s/ John L. Krieger*    */s/ Thomas D. Leland*
JOHN L. KRIEGER, ESQ.    Thomas D. Leland (Admitted pro hac vice)
Nevada Bar No. 6023    8694 E. 28th Ave.
GREGORY R. GEMIGNANI, ESQ.    Denver, CO 80238
Nevada Bar No. 7346    Tel: (303) 961-8072
3883 Howard Hughes Pkwy., Suite 800    Email: thomas.leland@lelandshaffer.com
Las Vegas, Nevada 89169
Tel: (702) 550-4439    **BLACK & WADHAMS**
Fax: (844) 670-6009
Email: jkrieger@dickinsonwright.com    Allison R. Schmidt, Esq.
Email:    NV Bar No.:
ggemignani@dickinsonwright.com    10777 W. Twain Avenue, Suite 300
    Las Vegas, NV 89135
**LOOPER GOODWINE P.C.**    Tel: (702) 869-8801
    Fax: (702) 869-2669
STEPHEN W. ABBOTT, ESQ.    Email: aschmidt@blackwadhams.law
(Admitted *pro hac vice*)
1300 Post Oak Blvd., Suite 750    *Attorneys for Defendants*
Houston, Texas 77056
Tel: (713) 335-8883
Fax: (713) 335-8601
Email: sabbott@loopergoodwine.com

*Attorneys for Plaintiff*
*Life Root, LLC*


    **IT IS SO ORDERED:**

    _____
    United States District Judge

    DATED:  February 3, 2026



BALANCE VENTURES, LLC D/B/A PURE7, and MARK WILLIS
CASE NO.:  2:25-cv-01325-MMD-MDC

# EXHIBIT 1
# (A copy of the proposed First Amended Complaint)

LIFE ROOT, LLC V. ALTERAEX, LLC (f/k/a KANNA21, LLC), PURE BALANCE
VENTURES, LLC D/B/A PURE7, and MARK WILLIS
CASE NO.: 2:25-cv-01325-MMD-MDC

**DICKINSON WRIGHT PLLC**
JOHN L. KRIEGER, ESQ.
Nevada Bar No. 6023
GREGORY R. GEMIGNANI, ESQ.
Nevada Bar No. 7346
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169
Tel: (702) 550-4439
Fax: (844) 670-6009
Email: jkrieger@dickinsonwright.com
Email: ggemignani@dickinsonwright.com

**LOOPER GOODWINE P.C.**
STEPHEN W. ABBOTT, ESQ. (Admitted *pro hac vice*)
1300 Post Oak Blvd., Suite 750
Houston, Texas 77056
Tel: (713) 335-8883
Fax: (713) 335-8601
Email: sabbott@loopergoodwine.com

*Attorneys for Plaintiff*
*Life Root, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LIFE ROOT, LLC, a Delaware limited liability company, | CASE NO.: 2:25-cv-01325-MMD-MDC |
| *Plaintiff,* | **FIRST AMENDED COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| ALTERAEX, LLC (f/k/a KANNA21, LLC), a Texas limited liability company, PURE BALANCE VENTURES, LLC D/B/A PURE7, a Texas limited liability company, and MARK WILLIS, an individual, | |
| *Defendants.* | |

Plaintiff Life Root, LLC ("Life Root"), hereby states its first amended complaint as follows:

1

## NATURE OF CASE

1.      This is an action for false designation of origin and unfair competition, as well as cybersquatting against the <gopure7.com> and <therealpure7.com> domain names, under the Lanham Act 15 U.S.C. § 1125, *et seq.*; trademark infringement and unfair competition under Nevada state and common law; unfair and deceptive acts under the Nevada Deceptive Trade Practices Act, NRS 598.0915, *et seq.*; breach of contract; business disparagement; tortious interference with existing contracts; and tortious interference with prospective business relations. Life Root also seeks a declaratory judgment that Alexander Rochford ("Rochford") is the sole member, owner and manager of Life Root, and that Life Root, by assignment from Rochford, is the sole owner of the PURÉ7 brand and trademark.

2.      Plaintiff Life Root has built a successful brand using its trademark, PURÉ7, and become a leader in the herbal supplement industry. The Defendants named herein have engaged in a whirlwind of unlawful conduct in an effort to intentionally harm Life Root and its founder and sole-member and manager, Rochford, by intentionally and willfully infringing Life Root's trademark and committing any number of business torts in an effort to usurp Life Root's business, including stealing Life Root's current and prospective manufacturers, distributors and customers, Life Root's goodwill and its reputational value, and intentionally and willfully infringing Life Root's PURÉ7 trademark.

3.      Immediate and preliminary injunctive relief are necessary to prohibit Defendants, and each of them, from using, displaying, and offering for sale product bearing the PURÉ7 trademark.

4.      Immediate and preliminary injunctive relief are necessary to have the name servers disabled and domain registrars place serverHold and serverTransferProhibited on the <gopure7.com> and <therealpure7.com> domain names (the "Infringing Domain Names") pursuant to the Anti-cybersquatting Consumer Protection Act ("ACPA"), and transfer the same to Plaintiff for the pendency of the action.  On August 27, 2025, this Court issued an order staying this case pending arbitration in Colorado.  (*See* ECF No. 45.)

5.      On August 8, 2025, after hearing oral argument, the Court denied Life Root's renewed emergency motion for a preliminary injunction without prejudice and terminated the previously-issued temporary restraining order.  (*See* ECF No. 39.)

6.      Following an arbitration hearing held in Denver, Colorado on October 28, 2025, a final order was entered on November 7, 2025.  Exhibit 1 ("Amended Arbitration Order"). The Amended Arbitration Order provides that:

> *. . . the factual issues underlying the very formation, capitalization, profits participation, and ownership of Life Root, as well as the PURÉ7 trademark preceded the [Independent Contractor's Agreement ("ICA")] and were not within the scope of services contemplated in the ICA . . . As such, those disputes are non-arbitrable and must be decided by the court*.

*Id*. at 4 (emphasis added).

7.      The Arbitrator denied Kanna21's motions for injunctive relief, to sequester funds, and the appointment of a receiver, finding that these are issues properly before this Court (and the Texas court), and stayed the arbitration "pending a judicial determination of the ownership of Life Root." (Id. at 5).

## THE PARTIES

8.      Life Root is a Delaware limited liability company with its principal place of business located in Houston, Harris County, Texas.

9.      Alteraex, LLC (f/k/a Kanna21, LLC) ("Kanna21") is a Texas limited liability company with its principal place of business located in Houston, Harris County, Texas.  Kanna21 has answered and appeared herein.

10.     Pure Balance Ventures, LLC d/b/a Pure7 ("Pure Balance") is a Texas limited liability company with its principal place of business located in Houston, Harris County, Texas. Pure Balance has answered and appeared herein.

11.     Mark Willis ("Willis") is an individual resident of, upon information and belief, Puerto Rico.  Willis has answered and appeared herein.

3

12.     At all times herein, Defendant Willis conspired with and effectively directed, controlled, and authorized the acts of the other Defendants and individuals named or identified herein.

## JURISDICTION AND VENUE

13.     Life Root's claims are for false designation of origin and unfair competition under the Lanham Act 15 U.S.C. § 1125, *et seq.*; trademark infringement and unfair competition under Nevada common law; unfair and deceptive acts under the Nevada Deceptive Trade Practices Act, NRS 598.0915, *et seq.*; breach of contract; business disparagement; tortious interference with existing contracts; and tortious interference with prospective business relations.

14.     The Court has original subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. §§ 1331 and 1338. This case primarily involves a federal question. This Court also has supplemental jurisdiction over the state law claims in this matter pursuant to 28 U.S.C. § 1367(a).

15.     The Court may exercise personal jurisdiction over Defendants because they purposefully direct their activities toward the State of Nevada and, thus, purposefully avail themselves of the privileges of conducting business in the State of Nevada, and have directly harmed Life Root in this judicial district by willfully infringing Life Root's trademark rights, which Defendants knew or should have known would cause injury to Life Root in Nevada.

16.     More specifically, Defendants advertise, offer for sale, and sell goods to consumers in Nevada using Life Root's PURÉ7 trademarks, including, but not limited to, at the CHAMPS show in Las Vegas, Nevada.

17.     Defendants, and each of them, committed tortious acts that they knew or should have known would cause injury to Life Root in Nevada.

18.     This Court has the authority to grant the declaratory relief requested herein under the Declaratory Judgment Act and this Court's inherent equitable powers. *See* 28 U.S.C. § 2201, 2202; *see also* FED. R. CIV. P. 57.

19.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events

4

or omissions giving rise to Life Root's claims occurred in this judicial district, and thus, confusion about the origin of Defendants' goods is likely to occur in this district. Pursuant to LR IA 1-6, venue lies in the unofficial Southern Division of this judicial district.

## GENERAL ALLEGATIONS

### *Background on Life Root*

20. In June 2024, prior to Life Root's formation, Willis encouraged Rochford to start a company (which would later become Life Root) to purchase 7-Hydroxymitragynine ("7OH") from Kanna21, a wholesale supplier of 7OH. (7OH is a chemical compound found in the plant Mitragyna speciosa, that is commonly known as kratom.). This would allow Rochford to develop his own customer base for 7OH products under his own brand and become an additional buyer of Kanna21's 7OH ingredients. Under this concept, neither Willis nor Kanna21 would own any shares or membership interests in the new company. Instead, it was contemplated that a Willis-controlled company would take an option to acquire a part of Life Root if it became successful. Life Root was formed with this option concept in mind. But, the option never came to fruition because the parties never agreed on acceptable terms or finalized an option purchase agreement. Likewise, the parties never agreed to or finalized a company agreement spelling out any ownership interests in Life Root other than Rochford's 100% ownership or how Life Root would be managed once the contemplated option was exercised.

21. Notwithstanding the absence of these agreements, Life Root, a Delaware limited liability company, was formed on August 27, 2024 with its principal place of business in Houston, Texas.

22. Life Root is a member-managed company formed initially with two members, Rochford and his father, Paul Rochford, each with equal membership interests. Rochford's father later assigned his interests in the company to Rochford.

23. Rochford is the sole member and manager of Life Root.

24. From Life Root's inception to the present day, neither Kanna21 nor any related entity has ever funded or contributed to Life Root's operating expenses, made a capital

contribution, or invested in Life Root or the development of the PURÉ7 brand.  Instead, Life Root has been funded by its own revenues and by Rochford himself, including loans he personally secured from lenders, friends, and family.  In other words, Rochford took all the risks associated with the creation and development of Life Root, its 7OH products, and the PURÉ7 Marks.

25.    From Life Root's inception to the present day, Rochford has managed and operated Life Root's day-to-day business, including managing its bank accounts, scheduling meetings, placing orders from Kanna21, determining which PURÉ7 products would be produced from the active 7OH ingredients purchased from Kanna21, who PURÉ7 products would be sold to, the quantity sold, and their pricing. Additionally, Rochford signed all Life Root contracts, and no one associated with Kanna21 co-signed or approved them, except those directly with Kanna21 (as a counterparty) for Life Root's purchase of raw 7OH ingredients

26.    Life Root is in the business of selling herbal supplement products that contain 7OH.

27.    In June 2024, and prior to forming Life Root, Rochford developed the PURÉ7 trademark. The PURÉ7 trademark was developed solely by Rochford, and been assigned to Life Root, the owner of the PURÉ7 trademark.

28.    On August 27, 2024, by virtue of assignment from Rochford, Life Root first used the PURÉ7 mark in commerce by labeling and offering for sale 7OH products to the public.

29.    Since as early as August 27, 2024, Life Root has also done business as PURÉ7.

30.    Since as early as August 27, 2024, Life Root has continuously utilized the PURÉ7 trademark in commerce, commercialized its 7OH products by selling them with the PURÉ7 trademark, marketed and promoted its products with the PURÉ7 trademark.

31.    Life Root has become profitable and a leader in the 7OH herbal supplement industry.

32.    Life Root's principal, Rochford, is the record owner of Nevada trademark registrations for PURÉ7 (NV Reg. No. T202507115889075) issued on July 3, 2025, in Class 101 for "[o]nline store services featuring herbal supplements containing kratom in various forms

including tablet, powder and liquid; providing website featuring consumer information about products containing kratom"; and PURÉ7 (NV Reg. No. T2025071115889095) issued on July 3, 2025, in Class 18 for "[h]erbal supplements containing kratom in various forms, including tablet, powder and liquid" (the "PURÉ7 Marks"). True and correct copies of the registration certificates for the PURÉ7 Marks are attached here as Exhibit 2. The PURÉ7 Marks have been assigned to Life Root.

33.     Life Root has subsequently become the owner of the PURÉ7 Marks by virtue of assignment.

34.     Life Root is also the assignee of numerous trademark registrations for PURÉ7 that have issued in jurisdictions around the United States various classes (depending upon the state classification structure), including Alaska (Registration Nos. 10328620 and 10328619), Arizona (Registration Nos. 9439536, 9439537 and 9439541), California (Registration Nos. 02049116 and 02049121), Colorado (Registration Nos. 20251778421 and 20251778489), Connecticut (Registration Nos. 0040001487 and 0040001488), Georgia (Registration Nos. T-32777 and S-32778), Hawaii (Registration Nos. 4308966 and 4308967), Illinois (Registration Nos. 119831 and 119830), Idaho (Registration No. 034364), Kentucky (Registration Nos. 020396 and 020397), Minnesota (Registration Nos. 156920021 and 156920028), Mississippi (Registration Nos. 117889 and 117890), Missouri (Registration Nos. S022492 and S022493), New Jersey (Registration Nos. 27540 and 27541), New York (Registration Nos. R34643 and S264248), North Carolina (Registration Nos. T-25121 and T-25122), Oklahoma (Registration No. 13853155), Pennsylvania (Registration No. 001473811), and Utah (Registration No. 14234906-0190).

35.     Life Root has continuously used the PURÉ7 Marks in connection with herbal supplements containing kratom (the "PURÉ7 Goods") since at least August 27, 2024. The cornerstone of Life Root's product-line is sold under the trademark, PURÉ7. Life Root has placed the PURÉ7 trademark on product packaging, on displays and other promotional materials, as well

7

as documents associated with the 7OH products it sells.

36. Life Root advertises and sells the PURÉ7 Goods through its website located at <getpure7.com>. A true and correct copy of the home page of Life Root's website is attached hereto as Exhibit 3.



37. Life Root has spent substantial amounts of money to advertise and promote the PURÉ7 Marks in print, broadcast media, point-of-sale materials, and on the Internet throughout the United States and around the world.

38. Based on its Nevada trademark registrations and extensive use, Life Root owns the exclusive right to use the PURÉ7 Marks in connection with herbal supplements containing kratom.

39. The PURÉ7 Marks are well established in the herbal supplement market.

40. Life Root's promotion and sale of the PURÉ7 Goods using the PURÉ7 Marks have made the marks valuable as an identifier of source for the PURÉ7 Goods that serve to distinguish the PURÉ7 Goods from competing goods.

41. Customers in this judicial district and elsewhere readily recognize the PURÉ7

Marks as a distinctive designation of the origin of the PURÉ7 Goods.

42.     The PURÉ7 Marks have significant goodwill in the marketplace and are uniquely associated with Life Root and its business, as well as the quality and nature of the PURÉ7 Goods.

### Defendants' Infringing Activities

43.     Kanna21, directly or through another commonly controlled affiliate, is, among other things, a supplier of 7OH ingredients, and is controlled by Willis, its manager or controlling shareholder.

44.     Kanna21, or one of its affiliates, supplied Life Root with active 7OH ingredients in the same manner that Kanna21 supplies its other customers. Kanna21, or an affiliate, supplied active 7OH ingredients to an independent third-party manufacturer who would "press" tablets for Life Root's purchases of the 7OH products. The manufacturer contracts with Kanna21 to produce the tablets and separately contracts with Life Root (similar to other customers of Kanna21) to package and deliver the 7OH products to customers of Life Root, as directed by Life Root. However, customers of Life Root purchase the packaged and trademarked PURÉ7 products from Life Root.

45.     Kanna21 agreed that Life Root was not required to pay Kanna21 until Life Root's customers paid Life Root.

46.     During the CHAMPS trade show in Chicago on June 10-12, Brooke Willis ("Brooke") misled Maurice Van Pelt ("Maurice") into speaking with the owner of CHAMPS to secure a booth space for Kanna21 at the CHAMPS trade show in Las Vegas. Maurice has had a CHAMPS trade show presence for 30 years and is personal friends with the owner of the tradeshow, which allows Maurice booth space allocation at the very front of the show.

47.     On or about June 23, 2025, for the purpose of infringing and stealing the PURÉ7 brand, Kanna21 sent Rochford a $20,000 payment, ostensibly for the purpose of establishing that that the PURÉ7 trademark and brand was developed and paid for by Kanna21. Rochford returned and rejected this payment as having no rightful reason for the payment – Rochford developed the PURÉ7 trademark, which he has assigned to Life Root, the owner of the PURÉ7 trademark.

9

48.    Kanna21's halfhearted attempt to falsely establish ownership of the PURÉ7 brand was made despite the fact that Kanna21 knows that: (a) Kanna21 has never used the PURÉ7 trademark in commerce for 7OH products or otherwise prior to Rochford's rejection of Willis's takeover effort of Life Root; (b) Rochford developed the PURÉ7 trademark; (c) Rochford developed the first production designs of the PURÉ7 trademark; (d) Life Root registered the <getpure7.com> domain name and created the PURÉ7 website; (e) Life Root was the only known entity selling 7OH products with the PURÉ7 trademark; and (f) all of the costs associated with the development of the PURÉ7 trademark (as well as the startup costs and operating capital of Life Root) were paid for by Rochford. All of foregoing predates any arrangement Kanna21 purports to have with Rochford.

49.    On or about June 23, 2025, Willis and Kanna21 had its counsel knowingly file a fraudulent trademark application with the United States Patent and Trademark Office ("USPTO") seeking to register PURÉ7 as Kanna21's own trademark (the "Infringing Mark"). At the time of the filing, Willis and Kanna21 knew the application was fraudulent and contained false information including, at a minimum, (a) Kanna21's false claim of ownership of the PURÉ7 mark, (b) false and fictitious date of first use by Kanna21 on June 24, 2024 (which was the date that Rochford first discussed the name as a potential brand with Willis and his family), (c) false and fictitious date of first use in commerce on September 3, 2024 (Kanna21 never used the mark in commerce or otherwise prior to June 2025), (d) false and fraudulent specimen of the PURÉ7 mark that has never been used in commerce or otherwise, and (e) false representation that that the PURÉ7 mark was used with and is associated with nutritional dietary supplements, instead of identifying kratom as an ingredient.

50.    Despite only having filed a trademark application, Kanna21 has falsely claimed to this Court and the Arbitrator that "Kanna21 owns the federal trademark for Puré7 . . ." (*See, e.g.*, ECF No. 31-6, ¶ 19.)

51.    On November 18, 2025, the USPTO issued a Nonfinal Office Action ***rejecting*** Kanna21's trademark application on multiple grounds.

10

52.     Despite this rejection, and as recently as November 24, 2025, Kanna21 falsely stated that it is "selling 7OH to the public under Kanna21's federally trademarked Puré7 brand." (ECF No. 51-4, ¶ 11.)

53.     On or about December 30, 2025, Kanna21 filed its response to USPTO's Nonfinal Office Action.  In its response, Kanna21 changed the filing basis for the application from actual use to *an intent to use*, thus withdrawing the first use dates recited in its initial application.

54.     Prior to Kanna21 filing its original application in June of 2025, counsel for Kanna21 confirmed in writing that Life Root was the only known entity selling 7OH products using the PURÉ7 trademark by stating that "Life Root is Pure7."

55.     The efforts undertaken by Defendants, and each of them, to file a fraudulent trademark application were to falsely create the appearance of ownership of the PURÉ7 trademark so that they could set about their willful infringement of the PURÉ7 trademark, its unfair competition with Life Root, the false designation of the origin of its 7OH products, and to tortuously interference with Life Root's contractual and prospective business relationships, as well as its disparagement of Life Root, among other things.

56.     On about June 24, 2025, and notwithstanding the corporate structure of Life Root as registered with the Delaware Secretary of State, Willis claimed ownership and control over Life Root and by extension, the PURÉ7 trademark. Willis went on to falsely claim to Rochford for the first time that that PURÉ7 is owned and managed by Kanna21.

57.     Kanna21 made these false claims knowing that PURÉ7 was developed by Rochford and utilized by Life Root since the company's inception on August 27, 2024.

58.     Surprisingly, Willis made these claims knowing full well that Life Root had continuously utilized PURÉ7 in commerce for 10 months and that the startup costs associated with Life Root had been funded entirely by Rochford, as well as its operating expenses, using Rochford's own capital, as well as loans from others that Rochford secured.

59.     On or about June 26, 2025, unbeknownst to Rochford, Brooke (on behalf of Willis and Kanna21) paid the registration fee for the booth that Life Root had reserved for itself for the

CHAMPS trade show in Las Vegas. Brooke misled the event coordinator, Maurice Van Pelt, and falsely claimed that she was booking and paying for the booth on behalf of PURÉ7.

60. Subsequently, on or about July 2, 2025, and unbeknownst to Life Root, Kanna21 paid for the booth designs that Life Root designed for the trade show utilizing the PURÉ7 brand and other design images they obtained from the Life Root website without permission or authorization.

61. Rochford was forced to speak with CHAMPS personnel in an effort to try and re-secure Life Root booth space for the event, to which the CHAMPS personnel ultimately agreed and restored Life Root's right to participate in the event. It was agreed that a security guard will be necessary to prevent Kanna21 from sending people to overtake Life Root's booth.

62. Life Root learned during its investigation that Kanna21 had instructed Nexiuum several months earlier to slow roll Life Root's orders of PURÉ7 and place them on the back-end of Nexiuum's production line under the guise that the PURÉ7 was not important to anyone, which was falsely stated by Brooke to Nexiuum. Upon information and belief, this was done by Kanna21 in an effort to disrupt Life Root's business to gain leverage over Life Root.

63. Life Root's investigation further revealed that Defendants, or those acting on their behalf, contacted Life Root's manufacturers, distributors and customers, including but not limited to, Print 24/7, Bevanton, Nexiuum, Elite Wholesale, Chem Nerdz, Bahama Mama, and 7 Star/Asha Wholesale, among others, and falsely claimed that Life Root did not own the PURÉ7 trademark and that Life Root, as well as the PURÉ7 trademark and its brand, has no value.

64. Upon information and belief, Defendants, or those acting on their behalf, have also falsely claimed that Willis owns 90% of Life Root and that Rochford has been lying about his ownership interests in Life Root.

65. On July 1, 2025, Brooke contacted Life Root's graphic designer and, upon information and belief, coerced (if not threatened) into sharing Life Root's proprietary design files that Life Root spent hours designing and already paid for. Upon learning this, Rochford requested the designer not to share the design files with Kanna21 and requested that the designer

12

send Rochford a consolidated copy of the design files. The designer refused to send Rochford the files that had been paid for by Life Root and stated that she has "been instructed to put everything into quarantine at this time . . ." Upon information and belief, the designer was coerced (if not threatened) by Defendants, or those acting on their behalf, to comply with Brooke's demands made on behalf of Kanna21 and Willis.

66.    Further, Defendants ordered packaging from Life Root's package supplier, Print247, using designs that Life Root specifically created for the Champs trade show utilizing the PURÉ7 brand and other design images Defendants obtained from the Life Root website without permission or authorization.

67.    Moreover, while setting up Life Root's booth at the CHAMPS show, Print247 was mistakenly directed to Defendants' booth, further indicating actual confusion. A true and correct copy of the Print247 text exchange is attached hereto as Exhibit 4.

68.    On or about July 2, 2025, Brooke, who now claims to be the President of Kanna21 (n/k/a Alteraex), transmitted letters to third parties in the herbal supplement industry including, upon information and belief, Life Root's manufacturers, distributors, and customers (and potential manufacturers, distributors, and customers), with the subject line "Exclusive Ownership and Authenticity of Puré7." A true and correct copy of the letter is attached hereto as Exhibit 5. The letter falsely claims that Kanna21 (i.e., Alteraex) is the exclusive owner of "a core product in our lineup: Puré7," and that "Puré7 is a product . . . marketed, and exclusively owned by Alteraex, LLC." *Id.*

69.    The letter makes the false claims of ownership absolutely clear and that Kanna21 intends to contribute to and/or induce infringement of Life Root's PURÉ7 trademark: "We hold all rights to the Puré7 name, formula, branding, associated intellectual property, and have assigned the exclusive right to sell Puré7 to our affiliate, Pure Balance Ventures, LLC d/b/a Pure7. No other company or individual is authorized to produce, sell, market, or distribute Puré7 in any form . . ." *Id.* (emphasis added).

70.    On July 2, 2025, upon learning that Kanna21 had tried taking over Life Root's

booth space for the upcoming CHAMPS trade show in Las Vegas, Rochford and Maurice called the owner of CHAMPS and informed him that Brooke is a disgruntled ex-seconded Life Root employee. Further, Rochford informed CHAMPS about Life Root's Nevada state trademark registrations for the PURÉ7 Marks. Rochford showed the owner of Champs previous bank statements proving Life Root paid for the CHAMPS shows in Atlantic City and Chicago, and that Life Root has a contractual relationship with Maurice and his company, Cealium. The owner of CHAMPS represented he would refund Kanna21 its payment and allow Life Root to use the PURÉ7 Marks at the CHAMPS trade show in Las Vegas. The next day, Life Root wired $29,355 to CHAMPS.

71.     Further, Maurice showed Rochford a letter from Brooke stating that Kanna21 is the only rightful owner of the PURÉ7 brand and the only company authorized to use the PURÉ7 trademark. Maurice shared that he is stressed because Kanna21 and Willis are contacting him multiple times a day trying to take over the Life Root booth at the CHAMPS trade show in Las Vegas, even though Maurice has a contract with Life Root to run trade show events.

72.     On July 9, 2025, Rochford discovered that Kanna21 had registered the domain names <gopure7.com> on June 24, 2025 and <therealpure7.com> on June 25, 2025. No website is linked to the domain names, and at the time the Complaint was filed, merely stated the website sites are "Coming Soon," and now, with respect to <therealpure7.com>, that the domain name is no longer accessible. True and correct copies of the holding pages from the time the Complaint was filed, along with updated holding pages for the domain names, are attached hereto as Exhibit 6.

73.     On July 14, 2025, Willis, Brooke, and their legal counsel repeatedly call the owner of CHAMPS asserting that they are the rightful owners of the PURÉ7 brand. The owner of CHAMPS relents and gives them another booth space. Additionally, they convince the owner of CHAMPS to not allow Life Root to display any PURÉ7 marketing material at the event.

74.     Further, because Kanna21 convinced the owner of CHAMPS not to allow Life Root to market PURÉ7 under its booth, Life Root had to completely switch its booth design for

14

the entire event costing Life Root a total in excess of $100,000.00.

75.     In January 2026, Life Root learned that Defendants are selling 7OH products in Nevada using the Infringing Mark. Defendants and its customers are distributing, marketing and promoting the 7OH products in Nevada using the Infringing Mark. For example, Defendants' customer, Kures Apothecary, located in Las Vegas, Nevada, has advertised, marketed and promoted 7OH products using the Infringing Mark. The advertising and marketing materials used to promote these 7OH products utilize the PURÉ7 Marks, which were taken directly from Life Root's website or Life Root's stolen design files.

76.     In connection with the 7OH products Defendants sold to Kures Apothecary with the Infringing Mark, a retail customer of the 7OH products contacted Life Root to complain about the quality of the product that was sold by Defendants using the Infringing Mark, further indicating actual confusion.

77.     Upon information and belief, Defendants, and each of them, have conspired in an effort to develop a strategy to destroy Life Root's and Rochford's business by breaching its contracts, disparaging them and their products, tortiously interfering with their contractual relationships and their prospective business relationships, willfully infringing the PURÉ7 trademark (or inducing infringement), diluting the PURÉ7 trademark, unfairly competing with Life Root.

78.     Defendants' use of the Infringing Mark is identical and/or confusingly similar to the PURÉ7 Marks in sight, sound, and meaning.

79.     Life Root developed enforceable rights in the PURÉ7 Marks well in advance of when Defendants began use of the Infringing Mark in the United States, including Nevada.

80.     Defendants knew of the PURÉ7 Goods when Defendants adopted and began using the Infringing Mark.

81.     Life Root has not expressly or impliedly authorized, permitted, or given consent to Defendants to use the Infringing Mark on any goods.

82.     Defendants display, promote, and make available for sale goods using the

15

Infringing Mark in the same manner that Life Root displays, promotes, and makes available for sale its PURÉ7 Goods using the PURÉ7 Marks.

83. Defendants are using, and have used, the Infringing Mark intentionally to trade upon the goodwill and substantial recognition associated with the PURÉ7 Goods offered under the PURÉ7 Marks.

84. Upon information and belief, Defendants use the Infringing Mark to associate its fraudulent goods with the PURÉ7 Goods or otherwise trade upon Life Root's reputation.

85. Upon information and belief, the use of the Infringing Mark by Defendants causes, or is reasonably likely to cause, consumer confusion, mistake, or deception regarding the origin, association or sponsorship of Defendants' fraudulent goods.

86. Upon information and belief, the use of the Infringing Mark by Defendants causes, or is reasonably likely to cause, consumers and potential customers to believe erroneously that Defendants' fraudulent good are put out by and/or sponsored or associated with goods originating from Life Root when, in fact, Defendants' fraudulent goods are not.

87. Further enhancing the likelihood of confusion, Defendants market its fraudulent goods to the same consumers as Life Root.

88. The acts of Defendants outlined herein cause, have caused, and/or are reasonably likely to cause, Life Root to suffer irreparable injury to its business and substantial loss of goodwill and reputation unless and until a court order enjoins Defendants from continuing to commit the wrongful actions outlined herein.

89. Life Root has no adequate remedy at law.

**COUNT I**
**False Designation of Origin and Unfair Competition**
**(Lanham Act § 43(a), 15 U.S.C. § 1125(a)(1)(A))**

90. Life Root re-alleges and incorporates by reference all allegations contained in this Amended Complaint as though fully set forth herein.

91. This is an action for false designation of origin arising under 15 U.S.C. § 1125(a).

92. Defendants' use of the Infringing Mark in connection with its fraudulent goods constitutes a false designation of origin that has caused, or is likely to cause, confusion, mistake, and deception as to the affiliation, connection, or association between the PURÉ7 Goods and the goods offered in connection with the Infringing Mark, all in violation of 15 U.S.C. § 1125(a)(1)(A).

93. Defendants have infringed on Life Root's trademark rights to the PURÉ7 Marks in order to: offer its fraudulent goods; trade on the reputation and goodwill of PURÉ7 Goods by causing consumer confusion and mistake; and deceive the public into believing that the goods offered in connection with the Infringing Mark are associated with PURÉ7 Goods or sponsored by, or approved by Life Root, when they are not.

94. Defendants had actual knowledge of Life Root's ownership and prior use of the PURÉ7 Marks and without Life Root's consent, have willfully violated 15 U.S.C. § 1125(a).

95. Defendants' use of the Infringing Mark to identify the fraudulent goods injures Life Root's commercial interest in its reputation.

96. The economic and reputational injury to Life Root of the infringement flow directly from the confusion and/or deception wrought by Defendants' infringement of Life Root's trademark rights.

97. The economic and reputational injuries occur due to the similarity of the Infringing Mark to the PURÉ7 Marks used for the PURÉ7 Goods.

98. Defendants' use of the Infringing Mark creates the false impression that Defendants' fraudulent goods originate from the same source as the PURÉ7 Goods.

99. The false impression created by Defendants' use of the Infringing Mark has and/or will, upon information and belief, lead consumers to purchase Defendants' fraudulent goods on the erroneous belief that Defendants' goods originate from the same source as the PURÉ7 Goods.

100. As a direct and proximate result of the foregoing acts by Defendants, Life Root has suffered, and continues to suffer, substantial damages not yet determinable, including irreparable injury for which there is no adequate remedy at law. Such irreparable injury will

17

continue unless and until Defendants are preliminarily and permanently enjoined by this Court from further violation of Life Root's rights, for which Life Root has no adequate remedy at law.

101. Pursuant to 15 U.S.C. § 1116, Defendants should be preliminarily and, upon final hearing permanently, enjoined from using the Infringing Mark, or variants thereof, or otherwise unfairly competing against Life Root or infringing on Life Root's trademark rights in the PURÉ7 Marks.

102. Pursuant to 15 U.S.C. § 1117, Life Root is entitled to recover from Defendants:

    a. Defendants' profits from selling the goods bearing the Infringing Mark, or any variants thereof;

    b. Life Root's actual damages, including, but not limited to, Life Root's added advertising costs necessitated by Defendants' sale of its fraudulent goods, or any variants thereof;

    c. Exceptional damages for intentional infringement, bad faith, and willful conduct, equal to three times profits or damages, whichever is greater; and

    d. The costs of this action;

103. Furthermore, Life Root seeks an order from this Court under 15 U.S.C. § 1118 compelling Defendants to destroy all materials bearing the Infringing Mark or any variants thereof.

## COUNT II
### Cybersquatting
### (Lanham Act, 15 U.S.C. § 1125(d), *et seq.*)

104. Life Root re-alleges and incorporates by reference all allegations contained in this Amended Complaint as though fully set forth herein.

105. Defendants have registered, trafficked in, and/or used domain names that are identical and confusingly similar to the PURÉ7 Marks, which were distinctive at the time Defendants registered <gopure7.com> and <therealpure7.com> in violation of the ACPA.

106. Defendants have a bad faith intent to profit from the PURÉ7 Marks because Defendants have no legal right to use the <gopure7.com> and <therealpure7.com> domain names.

107. Under the ACPA, Life Root is entitled to an order requiring the domain name registrar, GoDaddy.com, LLC, or the .com registry, VeriSign Inc., to transfer the <gopure7.com> domain name to Life Root's registrar of choice.

108. Under the ACPA, Life Root is entitled to an order requiring the domain name registrar, Squarespace Domains LLC, or the .com registry, VeriSign Inc., to transfer the <therealpure7.com> domain name to Life Root's registrar of choice.

109. As a direct and proximate result of such conduct, Life Root has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.Life Root has been required to retain the services of an attorney to pursue its claims and is entitled to reasonable attorneys' fees and costs incurred in the prosecution of this action.

**COUNT III**
**Nevada State and Common Law Trademark Infringement and Unfair Competition**

110. Life Root re-alleges and incorporates by reference all allegations contained in this Amended Complaint, as though fully set forth herein.

111. This cause of action for trademark infringement and unfair competition arises under both state and common law of the State of Nevada.

112. Life Root has a protectable interest in the distinctive PURÉ7 Marks as detailed above.

113. Life Root's PURÉ7 Marks are registered in the State of Nevada.

114. Defendants have deliberately and willfully attempted to trade on Life Root's goodwill in its PURÉ7 Marks, and the reputation Life Root has established in connection with herbal supplement products that contain 7OH.

115. Defendants have also deliberately and willfully attempted to confuse consumers as to the origin and sponsorship of the goods bearing the Infringing Mark and to pass them off as those of goods offered by Life Root and identified by its PURÉ7 Marks.

116. Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive Life Root of the ability to control the consumer perception of its goods offered under

19

the PURÉ7 Marks, placing the valuable reputation and goodwill of Life Root in the hands of Defendants without permission or approval of Life Root.

117.    By its actions, Defendants have infringed Life Root's PURÉ7 Marks, deliberately and with the intention of wrongfully trading on the goodwill and reputation symbolized by Life Root's PURÉ7 Marks.

118.    Defendants' conduct is likely to cause appreciable confusion, mistake, or deception as to the affiliation, connection or association of Defendants' fraudulent goods with the PURÉ7 Goods offered by Life Root, and as to the origin, sponsorship, or approval of Defendants' fraudulent goods bearing the Infringing Mark with the PURÉ7 Goods offered by Life Root, all in violation of Nevada common law.

119.    On information and belief, Defendants' use of the Infringing Mark on Defendants' fraudulent goods injures Life Root's commercial interest in its reputation.

120.    As a result of Defendants' conduct, Life Root has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Life Root in its PURÉ7 Marks.

121.    The economic and reputational injuries occur due to the similarity of the Infringing Mark to the PURÉ7 Marks used for the PURÉ7 Goods.

122.    Defendants' use of the Infringing Mark, or variants thereof, creates the false impression that Defendants' fraudulent goods originate from the same source as the PURÉ7 Goods.

123.    The false impression created by Defendants' use of the Infringing Mark, or variants thereof, has and/or will, upon information and belief, lead consumers to purchase Defendants' fraudulent goods on the erroneous belief that Defendants' goods originate from Life Root.

124.    Thus, Life Root is entitled to recover an amount equivalent to the amount of profits that Defendants have derived and may continue to derive as a result of its unlawful misappropriation and infringement of Life Root's PURÉ7 Marks.

20

125. Defendants' conduct as described above has been willful, deliberate, malicious, and with intent to injure Life Root. Therefore, Life Root is also entitled to recover exemplary damages from Defendants in an amount sufficient to punish Defendants and to deter it and others from engaging in similar wrongful conduct in the future.

126. Defendants should also be preliminarily, and upon final hearing, permanently, enjoined from using the Infringing Mark or variants thereof.

## COUNT IV
### Violation of the Nevada Deceptive Trade Practices Act
### (NRS 598.0915, *et seq.*)

127. Life Root re-alleges and incorporates by reference all allegations contained in this Amended Complaint as though fully set forth herein.

128. Life Root owns, has the exclusive right to use and actively uses the PURÉ7 Marks in Nevada.

129. As alleged herein, Defendants have without consent or authorization from Life Root, used and continue to use advertising that is confusingly similar to the PURÉ7 Marks in interstate commerce, to sell and offer to sell the fraudulent goods in connection with the Infringing Mark.

130. The similarity between Defendants' use of the Infringing Mark is so great as to be likely to cause confusion, mistake, or deception as to the source or origin of Defendants' fraudulent goods in that the public and others are likely to believe that Defendants' goods are promoted by, sponsored by, approved by, licensed by, affiliated with, or in some other way connected with PURÉ7 Goods offered by Life Root.

131. Defendants' unauthorized use of the Infringing Mark on advertising is confusingly similar to Life Root's distinct PURÉ7 Marks.

132. Further, Defendants ordered packaging from Life Root's package supplier, Print247, using designs that Life Root designed for the Champs trade show utilizing the PURÉ7 brand and other design images Defendants obtained from the Life Root website without

21

permission or authorization.

133. On information and belief, Defendants' use of the Infringing Mark injures Life Root's commercial interest in its reputation.

134. The economic and reputational injuries to Life Root flow directly from the confusion and/or deception wrought by Defendants' infringement of Life Root's trademark rights.

135. The economic and reputational injuries occur due to the similarity of the Infringing Mark to the PURÉ7 Marks.

136. Defendants' use of the Infringing Mark constitutes deceptive trade practices under the Nevada Deceptive Trade Practice Act, NRS 598.0915(1), because Defendants are knowingly and intentionally using the Infringing Mark to trade on Life Root's hard-earned goodwill in the PURÉ7 Marks, as well as to pass off the Defendants' fraudulent goods as those offered by Life Root and cause confusion, mistake, or deception as to the affiliation, connection or association of Defendants and their goods with PURÉ7 Goods and as to whether the origin, sponsorship or approval of Defendants' goods are the same as PURÉ7 Goods.

137. Defendants' use of the Infringing Mark confuses and/or deceives consumers, and that confusion and/or deception causes them to withhold trade from Life Root by purchasing Defendants' goods instead of the PURÉ7 Goods.

138. Defendants' use of the Infringing Mark creates the false impression that Defendants' fraudulent goods originate from the same source as the PURÉ7 Goods.

139. The false impression created by Defendants' use of the Infringing Mark has and/or will, upon information and belief, lead consumers to purchase Defendants' goods on the erroneous belief that Defendants' goods originate from Life Root.

140. Defendants had direct and full knowledge of Life Root's prior use and rights in the PURÉ7 Marks before the acts complained of herein.

141. Defendants' unlawful and unfair conduct has led to a material diminution of the reputation and goodwill established by Life Root's PURÉ7 Marks.

142. As a result of Defendants' aforementioned conduct, Life Root has suffered

substantial damages, as a well as the continuing loss of the goodwill and reputation established by Life Root in its PURÉ7 Marks.

143. This continuing loss of goodwill cannot be properly calculated and, thus, constitutes irreparable harm and an injury for which Life Root does not have an adequate remedy at law. Due to the unfair nature of Defendants' actions, Defendants have caused, and unless enjoined by this Court, will continue to cause, serious and irreparable injury and damage to Life Root.

144. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Life Root's PURÉ7 Marks, thus entitling Life Root to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and attorneys' fees.

## COUNT V
### Tortious Interference With Prospective Business Relations

145. Life Root re-alleges and incorporates by reference all allegations contained in this Amended Complaint as though fully set forth herein.

146. Life Root is and was prepared to enter into valid, enforceable, and binding agreements with others at the CHAMPS trade show to manufacture, distribute or purchase Life Root's PURÉ7 products.

147. By attempting to exclude Life Root from the CHAMPS trade show and prohibit its ability to rightfully use and display its PURÉ7 Marks, as well as sell its PURÉ7 Goods as the show, Defendants, and each of them, did unlawfully interfere with the prospective business relations and prospective agreements, and will continue to do so by, among other things, indicating (a) that they own Life Root when they do not (and that Rochford does not own Life Root when he does); and/or (b) that they own the PURÉ7 trademark when they do not.

148. Moreover, Defendants ordered packaging from Life Root's package supplier, Print247, using designs that Life Root designed for the Champs trade show utilizing the PURÉ7 brand and other design images Defendants obtained from the Life Root website without

23

permission or authorization.

149. Defendants' actions, or those acting on their behalf, were done without proper or legitimate foundation or cause, for the expressed and intended purpose of either: (a) scaring and intimidating Life Root's prospective manufacturers, distributors, and customers away from doing business with Life Root, or (b) to unlawfully further their own interests to the detriment of Life Root.

150. The actions of these Defendants, and those acting on their behalf, were not designed to seek to protect their financial interests; rather, their actions were only intended to harm Life Root's financial interests.

151. Defendants, and each of them, engaged in the foregoing unlawful conduct with a conscious and malicious desire to interfere, and prevent, these prospective business relationships.

152. Defendants' ongoing intentional and unlawful tortious interference with Life Root's existing contractual relations is and was a direct and proximate cause of Life Root's damages, which have accrued, and are continuing to accrue, including the loss of future agreements and business relations for the manufacture, distribution and purchase of Life Root's PURÉ7 products, as well as a substantial decline the reputational value of Life Root's PURÉ7 products.

153. In addition, these Defendants conspired to materially and substantially preclude Life Root from entering into future agreements and business relations. These acts were committed with malice, actual malice, and/or gross negligence. In particular, Defendants, and each of them, knowingly acted, unlawfully conspired to act, and/or acted with a conscious indifference to Life Root's rights with the express purpose of unlawfully interfering with Life Root's prospective contractual relationships and business relations and with complete disregard to the damages they have caused and are causing to Life Root, including the reputational value of Life Root, including the products sold using the PURÉ7 trademark.

///

///

24

## COUNT VI
### Declaratory Judgment – Ownership of Life Root

154. Life Root re-alleges and incorporates by reference all allegations contained in this Amended Complaint as though fully set forth herein.

155. Rochford is the sole owner and the sole manager of Life Root.

156. Defendants have falsely claimed that Kanna21, another Sunflower-owned entity, and now, Sunflower Wellness, Inc., is the majority controlling owner of Life Root.

157. Defendants have falsely claimed that Kanna21, another Sunflower-owned entity, and now, Sunflower Wellness, Inc., is the controlling manager of Life Root.

158. Neither Rochford nor Life Root reached a binding and enforceable agreement with Kanna21 (or anyone else) that any individual or entity would have an option to acquire an ownership or profits interest in Life Root.

159. Neither Rochford nor Life Root reached a binding and enforceable agreement with Kanna21 (or anyone else) with respect to any future ownership and management interests of Life Root.

160. Defendants have previously asserted that there was a binding and enforceable agreement that Kanna21 (or another Sunflower-owned entity) would have an option to acquire an ownership interest in Life Root.  This assertion is false.

161. Defendants now assert that there was a binding and enforceable agreement that Sunflower Wellness, Inc., would have an option to acquire an ownership interest in Life Root. This assertion is false.

162. Defendants have asserted that there was a binding and enforceable agreement that Kanna21 (or another Sunflower-owned entity) had an option to acquire an ownership interest in Life Root for one dollar.  This assertion is false.

163.    Defendants now assert that there was a binding and enforceable agreement that Sunflower Wellness, Inc., had a "no-cost" option to acquire an ownership interest in Life Root. This assertion is false.

164.    Defendants have falsely claimed that Kanna21 (or another Sunflower-owned entity) made capital contributions to Life Root.

165.    An actual controversy exists between the Parties because Defendants have falsely claimed that one or more of Defendants and now, Sunflower Wellness, Inc., is the majority controlling owner of Life Root.

166.    Under the Declaratory Judgment Act and FED. R. CIV. P 57, the Court has the power to declare the rights and status of legal relationships between the Parties.

167.    Life Root respectfully requests a declaration that Rochford is the sole owner and the sole manager of Life Root.

**COUNT VII**
**Declaratory Judgment – Ownership of the PURÉ7 Trademark**

168.    Life Root re-alleges and incorporates by reference all allegations contained in this Amended Complaint as though fully set forth herein.

169.    Defendants have falsely claimed that Kanna21 is the owner of the PURÉ7 brand and trademark.

170.    Rochford was the first to use the PURÉ7 trademark in commerce on August 26, 2024.

171.    By assignment, Life Root first used the PURÉ7 trademark in commerce on December 27, 2024.

172.    Kanna21 represented to the USPTO that it first used the PURÉ7 trademark in commerce on September 3, 2024, which is after Rochford's and Life Root's first use of the PURÉ7

26

trademark in commerce on August 26, 2024 and, by virtue of assignment, August 27, 2024, respectively.

173.    Representatives of Kanna21 have testified that Kanna21 first used the PURÉ7 trademark in commerce on September 3, 2024, which is after Rochford's and Life Root's first use of the PURÉ7 trademark in commerce on August 26, 2024 and, by virtue of assignment, August 27, 2024, respectively.

174.    Life Root has continuously used the PURÉ7 trademark in commerce since August 27, 2024, and continues to use the PURÉ7 trademark to this day.

175.    An actual controversy exists between the Parties because Defendants have falsely claimed that Kanna21 is the owner of the PURÉ7 trademark.

176.    At no time did Rochford or Life Root act as an agent, contractually or otherwise, for Defendants for the development of the PURÉ7 trademark.

177.    At no time did Rochford or Life Root work with or for Defendants as part of a joint venture, contractually or otherwise, for the development of the PURÉ7 trademark.

178.    At no time did Rochford or Life Root owe Defendants a fiduciary duty.

179.    Under the Declaratory Judgment Act and FED. R. CIV. P 57, the Court has the power to declare the rights and status of legal relationships between the Parties.

180.    Life Root respectfully requests a declaration that Life Root is the sole owner of the PURE7 mark by virtue of a valid assignment from Rochford.

## **REQUEST FOR RELIEF**

WHEREFORE, as to all of its Claims, Life Root respectfully prays that this Court enter judgment in its favor and against Defendants, and relief as follows:

1)    A declaratory judgment that Rochford is the sole owner and the sole manager of Life Root;

2)    A declaratory judgment that Life Root is the sole owner of the PURÉ7 trademarks and brand;

3)    Judgment that Defendants, and each of them, jointly and severally, have: (a)

willfully used false designations of origin and/or engaged in unfair competition in violation of 15 U.S.C. § 1125(a); (b) willfully violated Life Root's Nevada state and common law rights in the PURÉ7 Marks; (c) willfully made fraudulent representations regarding the origin of Defendants' fraudulent goods; and/or (d) committed tortious interference with prospective business relations;

4)    A temporary restraining order, preliminary and permanent injunction prohibiting Defendants, and each of them, and where applicable, employees, officers, directors, agents, successors, and assigns of Defendants and any other person or entity in active concern or participation with the Defendants, from:

(a)    using in commerce the "PURÉ7" name and PURÉ7 Marks, including at the Champs trade show in Las Vegas, or any other confusingly similar trademark to the PURÉ7 Marks;

(b)    engaging in any other conduct which will cause, or is likely to cause, confusion, mistake, deception, or misunderstanding as to the affiliation, connection, association, origin, sponsorship, or approval of Defendants' fraudulent goods with PURÉ7 Goods; and

(c)    otherwise infringing upon the PURÉ7 Marks, falsely or deceptively advertising, or unfairly competing with Life Root in any manner whatsoever;

5)    A mandatory injunction requiring Defendants to immediately do the following:

(a)    recall and destroy all written materials, publications, advertisements and other materials that infringe the PURÉ7 Marks, or otherwise are likely to confuse or to mislead consumers in the United States;

(b)    file with the Court and serve upon Life Root within thirty (30) days after entry of the mandatory injunction a report in writing and signed under oath by respective corporate officers of Defendants setting forth in detail the manner and form in which each Defendant has complied with each of the terms of the Order entered by this Court in this matter, pursuant to 15 U.S.C. § 1116;

6)    A finding this is an exceptional case within the meaning of 15 U.S.C. § 1117(a);

7)    An award of damages against Defendants, and each of them, jointly and severally, for any and all damages, specifically including but not limited to: (a) monetary damages sustained

28

by Life Root; (b) any revenues and/or profits earned by Defendants as a result of the unlawful acts of Defendants as set forth herein; (c) treble damages; (d) all costs of this action and prejudgment interest; and (e) reasonable attorneys' fees;

8)      An order requiring (a) VeriSign Inc. (the .com registry) and/or GoDaddy.com, LLC (the domain name registrar) to place the <gopure7.com> domain name on serverHold and serverTransferProhibited for the pendency of the litigation; (b) VeriSign Inc. and/or GoDaddy.com, LLC to disable the name server information for the <gopure7.com> domain name so that it is no longer accessible to Internet users for the pendency of the litigation; (c) the current domain name registrar to change the registrar of record for the <gopure7.com> domain name from the current domain name registrar to Life Root's registrar of choice;

9)      An order requiring (a) VeriSign Inc. (the .com registry) and/or Squarespace Domains LLC (the domain name registrar) to place the <therealpure7.com> domain name on serverHold and serverTransferProhibited for the pendency of the litigation; (b) VeriSign Inc. and/or Squarespace Domains LLC to disable the name server information for the <therealpure7.com> domain name so that it is no longer accessible to Internet users for the pendency of the litigation; (c) the current domain name registrar to change the registrar of record for the <therealpure7.com> domain name from the current domain name registrar to Life Root's registrar of choice; and

10)      Such other and further preliminary and final relief as the Court deems just and equitable under the circumstances.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

29

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 28, Life Root hereby demands a trial by jury on all issues for which a trial by jury may be had.

DATED: February 2, 2026.

**DICKINSON WRIGHT PLLC**


*/s/ John L. Krieger*
JOHN L. KRIEGER
Nevada Bar No. 6023
GREGORY R. GEMIGNANI, ESQ.
Nevada Bar No. 7346
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169
Tel: (702) 550-4439
Fax: (844) 670-6009
Email: jkrieger@dickinsonwright.com
Email: ggemignani@dickinsonwright.com

**LOOPER GOODWINE P.C.**

STEPHEN W. ABBOTT, ESQ. (Admitted *pro hac vice*)
1300 Post Oak Blvd., Suite 750
Houston, Texas 77056
Tel: (713) 335-8883
Fax: (713) 335-8601
Email: sabbott@loopergoodwine.com

*Attorneys for Plaintiff*
*Life Root, LLC*

30

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of February, 2026, a true an correct copy of PLAINTIFF'S FIRST AMENDED COMPLAINT was served via the Court's CM/ECF e-filing system to all parties of interest as follow:

**LELAND SHAFFER LLP**
Thomas D. Leland (Admitted pro hac vice)
8694 E. 28th Ave.
Denver, CO 80238
Email: thomas.leland@lelandshaffer.com


**BLACK & WADHAMS**
Allison R. Schmidt, Esq.
10777 W. Twain Avenue, Suite 300
Las Vegas, NV 89135
Email: aschmidt@blackwadhams.law

*Attorneys for Defendants*

/s/ _Ashley B. Moretto_
Dickinson Wright PLLC

31

BALANCE VENTURES, LLC D/B/A PURE7, and MARK WILLIS
CASE NO.:  2:25-cv-01325-MMD-MDC

# EXHIBIT 1
## (True and correct copy of Amended Arbitration Order)

LIFE ROOT, LLC V. ALTERAEX, LLC (f/k/a KANNA21, LLC), PURE BALANCE
VENTURES, LLC D/B/A PURE7, and MARK WILLIS
CASE NO.: 2:25-cv-01325-MMD-MDC



E-SERVICE

77730097
Nov 07 2025
01:20PM

File & ServeXpress

Judicial Arbiter Group, Inc.
1601 Blake Street, Suite 500
Denver, Colorado 80202
Phone: 303-572-1919
Facsimile: 303-571-1115

In Re the Arbitration of:

**Kanna21, LLC**

       Claimant,

v.

**Alex Rochford** and **Life Root LLC**

       Respondents.

David H. Goldberg - Arbiter

▲   COURT USE ONLY   ▲

JAG Case No. 2025-1109A

---

AMENDED ORDER RE: ARBITRABILITY

This matter is before the Arbitrator on the threshold issue of arbitrability. Having reviewed the pleadings, exhibits, testimony of witnesses at hearing, and the arguments of counsel, the Arbitrator finds and concludes as follows:

On July 11, 2025, Alexander Rochford ("Rochford") and Life Root, LLC ("Life Root") filed suit against Pure Balance Ventures, LLC[1] ("Pure Balance"), Mark Willis ("Willis") and other defendants in federal district court in Harris County, Texas, asserting ownership of Life Root and its intellectual property, as well as claims based in tort and contract. On July 23, 2025, Rochford and Life Root sought an emergency *ex parte* temporary restraining order against Alteraex, LLC f/k/a/ Kana21[2] ("Kana21") in federal district court in Clark County, Nevada. Both lawsuits have been stayed pending a determination of arbitrability.

---

[1] Pure Balance Ventures is owned by Sunflower Wellness, LLC, another Willis-owned company.
[2] Kana21 is also owned by Sunflower Wellness, LLC

Kana21 seeks to arbitrate disputes involving the ownership of Life Root and the trademark PURÉ7, as well as claims for intellectual property theft, cybersquatting, business disparagement, defamation, breaches of contract, unfair competition, deceptive trade practices, and tortious interference. Life Root and Rochford deny the Arbitrator has authority to render an award. To the extent the issues are determined to be arbitrable, Kana21 seeks a restraining order as well as the appointment of a receiver and sequestration of funds.

Having listened closely to the testimony presented at hearing on the issue of arbitrability, the Arbitrator finds that Kanna21 was formed in 2023 as a supplier of herbal supplements that contain 7-Hydroxyumitragyne ("7OH"), a chemical compound commonly known as kratom. Kana21 processes or forms the 70H into tablets that are sold to retail customers.

In the spring of 2024, Willis, the principal owner of Kana21, decided to start a retail company to sell a branded 70H product. To this end Willis, contacted Rochford, with whom he had a prior business relationship, to execute on the opportunity. Willis did not want to make the new venture public at that time based on concerns that Kana21's retail customers may react negatively to active competition from the manufacturer and distributor of 70H.

The Arbitrator finds that Willis and Rochford initially agreed that Kana21, Sunflower Wellness, Pure balance or one of the Willis-owned Sunflower entities would own 80% of the new company and Rochford would own 20% of the company.  In order to avoid disclosure of the ownership structure the parties agreed that Kana21 or one of its related and/or affiliated entities would maintain a profits participation until it elected to exercise an option to convert the profits interest to an ownership interest for nominal consideration. This structure was modified by the parties in August of 2024 wherein it was agreed that Sunflower would hold a 73% interest in the new company, and Rochard, his brother, and another investor would collectively own 27% of the business.[3]  The new

---

[3] Rochford and his father, Paul Rochford, signed an operating agreement in which they each purportedly owned a 50% interest in Life Root. Paul Rochford subsequently transferred his interest to Rochford through an amended and restated operating agreement. The services contemplated by and arising out of the ICA did not include profits participation and ownership of Life Root.

company, called Life Root, was registered with the Delaware Secretary of State's office on August 27, 2024, by Rob Miller, the president and general counsel of Sunflower Wellness.

Life Root was capitalized through $2 million in product from Kana21 that was repayable as the product was sold, as well as the investment of time, skill and labor from the parties. No operating agreement was signed at the time the business was capitalized. The parties worked together between June and September of 2024 to create the design, packaging, and name of the new product, which is called PURÉ7.

The parties dispute the date of first use and ownership of the trademark PURÉ7. What is not in dispute is that The PURÉ7 trademark was developed and first used in commerce before the Independent Contractor Agreement ("ICA") containing the arbitration provision was signed or became effective.

On October 4, 2024, Kana21 and Rochard, in his individual capacity, entered into the ICA dated effective September 1, 2024.  The ICA contemplates the provision of services. Specifically, the agreement provides

> 2. **Services**.  The Contractor agrees to perform the following services at (the "**Services**"):
>
> i.   Vendor identification, vetting, onboarding, and management; and
>
> ii.  Other services as agreed by the parties.

The ICA included the following dispute resolution provision in Paragraph 11(b):

> b.      Binding arbitration shall be conducted in Denver County, Colorado before a single arbitrator appointed in accordance with the applicable rules of the Judicial Arbiter Group or such other arbitration organization as is mutually agreeable to the parties. A party invoking arbitration after the filing of a court action must do so within thirty (30) days of service of the complaint or other pleading initiating the action, or any objection to proceeding in court shall be deemed waived.

Arbitration is a favored method of dispute resolution in Colorado, but parties are not forced to arbitrate disputes they have not agreed to arbitrate. *Lane v. Urgitus*, 145 P.3d 672 (Colo. 2006). An arbitration clause is a contract and must be interpreted in accordance with the plain and ordinary meaning of its terms. *Allen v. Pacheco*, 71 P.3d

3

375 (Colo. 2003). An Arbitrator must compel arbitration unless he or she can say "with positive assurance" that the arbitration clause is not susceptible of any interpretation that encompasses the subject matter of the dispute. *City & County of Dever v. Dist. Court*, 939 P.2d 1353, 1364 (Colo. 1997). Any ambiguities must be found in favor of arbitration. *Id.* When an arbitration clause includes verbiage such as "arising out of" or "relating to," it is broad in scope. *Smith v. Multi-Fin. Sec. Corp.*, 171 P.3 1267 (Colo. App. 2007).

The Arbitrator finds the arbitration clause at issue is a broad arbitration provision and there is a strong presumption of arbitrability. Notwithstanding the foregoing, Respondent argues that this matter is analogous to *Breaker v. Corrosion Control Corp.*, 23 P.3d 1278 (Colo. App. 2001). In *Breaker*, the court was presented with an arbitration provision that largely mirrored the one at issue. The court resolved the issue by focusing on the facts underlying the clause rather than the legal theories asserted.

The Arbitrator agrees that *Breaker* analysis is appropriate in this case. The Arbitrator finds that the factual issues underlying the very formation, capitalization, profits participation, and ownership of Life Root, as well as the PURÉ7 trademark preceded the ICA and were not within the scope of services contemplated in the ICA. These matters are not the type of services contemplated by or agreed to by Rochford or Kana21. As such, those disputes are non-arbitrable and must be decided by the court. The Arbitrator further finds that neither Willis, nor Sunflower Wellness, Pure Balance, Asahi Holdings, or other Willis-related or controlled entity are not parties to the ICA and cannot be compelled to arbitrate disputes with Rochford.

With respect to Rochford's assertion that the ICA's scope is limited to consulting services for Kanna21's wholesale kratom business and did not involve Life Root, the or its operations, the Arbitrator disagrees. There is credible evidence that Rochford's scope of services included the retail sale of 70H and new 70H delivery systems. These services arise out of and relate to the ICA. To the extent claims arose out of or are related to the

4

ICA through the date of the ICA was terminated[4], such disputes must be resolved via binding arbitration.

Based on the limited scope of the arbitration, the Arbitrator will not be ruling on motions for injunctive relief, for sequestration of funds, or the appointment of a receiver. These matters are properly before a court and there are two pending matters in Texas and Nevada.

Finally, damages are an element of every claim for relief that can be asserted in this arbitration. This matter is stayed pending a judicial determination of the ownership of Life Root.

Entered this 7th day of November, 2025.

_____
David H. Goldberg - Arbiter
Judicial Arbiter Group, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of November, 2025, a true and correct copy of the foregoing *Order* was served via electronic filing (*File & ServeXpress)*, addressed to the following:

All Counsel of Record

*Original Signature on File*
Jackie Burt, Administrative Clerk
Judicial Arbiter Group, Inc.

---

[4] The date of termination is in dispute. Rochford contends he terminated the ICA in February 2025. Kana21 argues the ICA was terminated in June 2025. The Arbitrator makes no findings concerning the length of time the ICA was in effect.

5

BALANCE VENTURES, LLC D/B/A PURE7, and MARK WILLIS
CASE NO.:  2:25-cv-01325-MMD-MDC

# EXHIBIT 2
## (True and correct copies of Registration Certificates)

LIFE ROOT, LLC V. ALTERAEX, LLC (f/k/a KANNA21, LLC), PURE BALANCE
VENTURES, LLC D/B/A PURE7, and MARK WILLIS
CASE NO.: 2:25-cv-01325-MMD-MDC





# SECRETARY OF STATE

## CERTIFICATE OF REGISTRATION

I, FRANCISCO V. AGUILAR, the duly elected and qualified Nevada Secretary of State, do hereby certify that the following **Trademark** was filed by **Alexander Q. Rochford**, the business address of 19419 Country Lake Drive, Magnolia, TX 77355 on 3rd day of July, 2025:

Mark (copy attached): **PURÉ7**

Class No: **18 - Medicines and pharmaceutical preparations.**

Description of goods or services: **Herbal supplements containing kratom in various forms, including tablet, powder and liquid**

Registrant's state of incorporation:

Date of first use in Nevada: **08/26/2024**

Date of first use anywhere: **08/26/2024**

Date of expiration: **07/03/2030**

Said registration was submitted with a description thereof and duly verified as required by law, and that the same is now on file and of record in this office.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Great Seal of State, at my office on  07/03/2025.

FRANCISCO V. AGUILAR
Secretary of State

Certificate Number: **T202507115889095**

You may verify this certificate

online at https://www.nvsilverflume.gov/home



# SECRETARY OF STATE



## CERTIFICATE OF REGISTRATION

I, FRANCISCO V. AGUILAR, the duly elected and qualified Nevada Secretary of State, do hereby certify that the following **ServiceMark** was filed by **Alexander Q. Rochford**, the business address of 19419 Country Lake Drive, Magnolia, TX 77355 on 3rd day of July, 2025:

Mark (copy attached): **PURÉ7**

Class No: **101 - Advertising and business.**

Description of goods or services: **Online store services featuring herbal supplements containing kratom in various forms including tablet, powder and liquid; providing website featuring consumer information about products containing kratom**

Registrant's state of incorporation:

Date of first use in Nevada: **08/26/2024**

Date of first use anywhere: **08/26/2024**

Date of expiration: **07/03/2030**

Said registration was submitted with a description thereof and duly verified as required by law, and that the same is now on file and of record in this office.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Great Seal of State, at my office on  07/03/2025.

FRANCISCO V. AGUILAR
Secretary of State

Certificate Number: **T202507115889075**

You may verify this certificate

online at https://www.nvsilverflume.gov/home

BALANCE VENTURES, LLC D/B/A PURE7, and MARK WILLIS
CASE NO.: 2:25-cv-01325-MMD-MDC

# EXHIBIT 3
## (True and correct copy of getpure7.com website)

LIFE ROOT, LLC V. ALTERAEX, LLC (f/k/a KANNA21, LLC), PURE BALANCE
VENTURES, LLC D/B/A PURE7, and MARK WILLIS
CASE NO.: 2:25-cv-01325-MMD-MDC

🔒 **PageVault**

| | |
|---|---|
| Document title: | Shop Pure7 \| Premium Organic Supplements & Wellness Products |
| Capture URL: | https://getpure7.com/ |
| Page loaded at (UTC): | Fri, 30 Jan 2026 05:08:56 GMT |
| Capture timestamp (UTC): | Fri, 30 Jan 2026 05:09:29 GMT |
| Capture tool: | 10.77.0 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/142.0.7444.265 Safari/537.36 |
| Operating system: | Linux (Node 22.21.1) |
| PDF length: | 7 |
| Capture ID: | oqPwTTqgtUXK1EkfxW6fRE |
| Display Name: | amoretto |

PDF REFERENCE #:     7D5bQK7JDrE131ASNjjbZG



Our Promise    Shop ▾    My Account ▾    Contact Pure7    Resources    $0.00 🛒



EXPERIENCE THE PURÉ7 DIFFERENCE

## Buy Pure 7OH Tablets – Premium Lab-Tested 7-Hydroxymitragynine Products

Pure7 offers premium, lab-tested 7OH tablets designed for exceptional purity. Additionally, each batch is manufactured under strict quality standards. As a result, our tablets remain consistent and reliable for research use.

Shop Now

## Wholesale 7OH Tablets – Become an Authorized Pure7 Retailer

Looking to stock 7OH products in your store or online shop? If so, becoming an authorized Pure7 retailer gives you several benefits. Become an authorized Pure7 retailer and gain access to:

- Bulk pricing
- Fast U.S. shipping
- Consistent inventory
- Verified 7OH purity

Register for Wholesale

## Shop Pure 7OH Tablets (7-Hydroxymitragynine Products)

All Pure7 tablets are crafted using clean processes and free from harsh chemicals. Furthermore, we avoid synthetics and fillers to ensure unmatched purity and consistency.

Available strengths: 20mg, 30mg, 60mg (AM Stack), and 60mg MAX Tablets.







Document title: Shop Pure7 | Premium Organic Supplements &amp; Wellness Products
Capture URL: https://getpure7.com/
Capture timestamp (UTC): Fri, 30 Jan 2026 05:09:29 GMT



# PURÉ7

Our Promise      Shop ▾      My Account ▾      Contact Pure7      Resources      $0.00 🛒









### PURE 7OH Tablets – 20mg & 30mg

Our signature high-purity 7OH tablets, engineered for stability and precision.

SHOP NOW

### PURE 7+ Tablets – 60mg (AM Stack)

A powerful 60mg formula designed to support clarity and focus during controlled research settings.

SHOP NOW

### PURE 7 MAX Tablets – 60mg Triple Berry

Premium 7OH tablets infused with natural berry flavor for smoother research handling.

SHOP NOW

### 7OH Strips – Coming Soon

Ultra-fast-dissolve 7OH strips designed for rapid application in research environments.

## Benefits of Pure7 7OH Tablets in Research

Higher controlled measurements may show increased relaxation patterns. For example, some studies observe more calmness in controlled environments.





## Mood Enhancement

Low measurements may support brighter mood markers during simulations.



## Stress Reduction

7OH may influence stress-response pathways under monitored conditions.



## Sleep Support

Higher measurements may show increased relaxation patterns.



## Calming Effect

May promote tranquility indicators in research environments.



## Discomfort Control

May influence pathways related to ease and comfort.



## Mental Clarity

Potential to enhance focus-related markers during cognitive studies.



Document title: Shop Pure7 | Premium Organic Supplements &amp; Wellness Products
Capture URL: https://getpure7.com/
Capture timestamp (UTC): Fri, 30 Jan 2026 05:09:29 GMT

Page 2 of 6

# Why Researchers Prefer Pure7 for 7OH Tablets

Researchers across the USA choose Pure7 for its purity, stability, and full transparency.

## Customer Reviews for Pure7 7OH Tablets

## Customer Reviews (Verified Buyers)



**D  David P.**  G

Finally a company that actually provides real COAs. Pure7 gives me full confidence in what I'm buying.

**S  Sarah L.**  G
Returning Customer

Before discovering Pure7, I was constantly nervous ordering from random sellers vague labels, no lab reports, and unclear ingredients. Pure7 is the first brand I've found that shows full transparency, including COAs for every batch. The tablets look professionally manufactured, the bottle seals are tight, and everything about the product feels legitimate and safe.

**A  Andrea M.**  G

Fast delivery, great packaging, and very clean tablets. Everything arrived exactly as described.

• • • • • • •

---

Certificates & Lab Reports for Pure7 7OH Tablets

## Verified Purity. Certified Potency. Full Transparency.
### Experience the Pure7 Difference

Pure7 is committed to complete transparency. Because of this, every batch undergoes third-party lab testing to confirm purity, potency, and safety.

**View Latest COAs →**



# Why Choose Pure7 7OH Tablets?

Document title: Shop Pure7 | Premium Organic Supplements &amp; Wellness Products
Capture URL: https://getpure7.com/
Capture timestamp (UTC): Fri, 30 Jan 2026 05:09:29 GMT

Our Promise        Shop ⌄        My Account ⌄        Contact Pure7        Resources                        $0.00 🛒

## Why Choose Pure7 7OH Tablets?

All Pure7 products are proudly produced in American facilities. In addition, these facilities follow industry-leading quality standards.

### 🌿 Lab Tested for Purity

Every batch is verified by certified third-party labs.Every batch is verified by certified third-party labs.

### 🇺🇸 Made in the USA

Every batch is verified by certified third-party labs.Every batch is verified by certified third-party labs.

### ⬜ Consistent Potency

Precision manufacturing ensures stable potency every time.

### ♻️ Clean Formulations

Free from solvents, pesticides, and synthetic additives.

### 👨‍👩‍👧 Family-Owned

Built on trust, transparency, and integrity.

### 💬 Customer Support

We assist with education, compliance, and product guidance.

## Frequently Asked Questions About 7OH Tablets

Below are answers to the most common questions researchers ask about Pure7 7OH tablets. To make things easier, we've summarized the key points clearly.

**— What Is 7-Hydroxymitragynine (7OH)?**                    ⌄

7-Hydroxymitragynine (7OH) is a naturally occurring alkaloid found in *Mitragyna speciosa*. It is present in very small amounts and is also formed from mitragynine through oxidation. In research settings, it is studied for its receptor interaction and biological activity. It is strictly intended for laboratory research only.

**+ How Do 7OH Tablets Work in Research Settings?**

**+ Where Can I Buy 7-OH Tablets?**

**+ What Are 7OH Products Used For in Research?**

**+ How Should 7OH Be Handled or Measured in Research?**

**+ Is 7OH Legal in the United States?**

**+ Are Pure7 7OH Tablets Lab-Tested?**



PURÉ7    Our Promise    Shop ⌄    My Account ⌄    Contact Pure7    Resources    $0.00 🛒

**+** Are Pure7 7OH Tablets Lab-Tested?    ›

**+** Do 7OH Tablets Require Special Storage Conditions?    ›

## Join the Pure7 Research Community

Stay informed with exclusive product releases, discounts, lab report updates, and early access to new 7OH innovations.

Sign up to receive:
- Exclusive discount codes
- Early product announcements
- Research insights
- Wholesale opportunities
- Special member-only offers

Enter email address

Sign Up

# PURÉ7

PURÉ7 is an official brand of:

 LIFE ROOT

**About PURÉ7**

PURÉ7 is an official brand specializing in premium **7-Hydroxymitragynine (7OH) research products**, crafted with transparency, integrity, and strict quality standards. We provide trusted, lab-verified 7OH tablets for authorized research purposes across the United States.

**Info**

About Us

Blog

7OH Dosage & Effects (Research Guide)

Where to Buy 7OH Tablets

Is 7OH Legal in the U.S.?

7OH Misuse & Addiction Risks (Safety Info)

**All Products**

7OH Tablets

7OH Bundles

PURE 7+ Tablets

PURE 7 MAX Tablets

Extract Shots

7OH Strips (Coming Soon)

MGM-15 Tablets

Wholesale / Bulk 7OH

**Links**

My Account

Contact Us

Cart

Rewards / Loyalty Program

Lab Tests (COAs)

Authorized Agents / Retailers

**Policies**

Shipping & Refund Policy

Terms of Service

Privacy Policy

Product Warnings

Age & Legal Restrictions

CONTACT US! support@getpure7.com | 1 402-527-8737

**Kratom & 7OH Disclaimer**

WARNING: 7-Hydroxymitragynine (7OH) products are intended for research use only.
Not for human consumption.
Keep out of reach of children.

Pure 7-OH Products are not available for shipment to the following States: Alabama, Arkansas, Florida, Indiana, Georgia, Oklahoma, Rhode Island, Wisconsin; or the following counties: Sarasota County (Florida), San Diego (California), Oceanside (California), Alton (Illinois), Jerseyville (Illinois), Edwardsville County (Illinois), Columbus (Mississippi), Union County (Mississippi), Ascension (Louisiana), Franklin (Louisiana), Rapides (Louisiana)

**Select Products are Compliant for Georgia and parts of Florida**

**FDA Disclaimer**

These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease



**Premium 7OH (7-Hydroxymitragynine) Research Products**



# PURÉ7

Our Promise  Shop ▾  My Account ▾  Contact Pure7  Resources  $0.00

Stay informed with exclusive product releases, discounts, lab report updates, and early access to new 7OH innovations.

Sign up to receive:
- Exclusive discount codes
- Early product announcements
- Research insights
- Wholesale opportunities
- Special member-only offers

Enter email address

Sign Up

# PURÉ7

PURÉ7 is an official brand of:



### About PURÉ7

PURÉ7 is an official brand specializing in premium **7-Hydroxymitragynine (7OH) research products**, crafted with transparency, integrity, and strict quality standards. We provide trusted, lab-verified 7OH tablets for authorized research purposes across the United States.



### Info
About Us
Blog
7OH Dosage & Effects (Research Guide)
Where to Buy 7OH Tablets
Is 7OH Legal in the U.S.?
7OH Misuse & Addiction Risks (Safety Info)

### All Products
7OH Tablets
7OH Bundles
PURE 7+ Tablets
PURE 7 MAX Tablets
Extract Shots
7OH Strips (Coming Soon)
MGM-15 Tablets
Wholesale / Bulk 7OH

### Links
My Account
Contact Us
Cart
Rewards / Loyalty Program
Lab Tests (COAs)
Authorized Agents / Retailers

### Policies
Shipping & Refund Policy
Terms of Service
Privacy Policy
Product Warnings
Age & Legal Restrictions

CONTACT US! support@getpure7.com | 1 402-527-8737

### Kratom & 7OH Disclaimer

WARNING: 7-Hydroxymitragynine (7OH) products are intended for research use only.
Not for human consumption.
Keep out of reach of children.

Pure 7-OH Products are not available for shipment to the following States: Alabama, Arkansas, Florida, Indiana, Georgia, Oklahoma, Rhode Island, Wisconsin; or the following counties: Sarasota County (Florida), San Diego (California), Oceanside (California), Alton (Illinois), Jerseyville (Illinois), Edwardsville County (Illinois), Columbus (Mississippi), Union County (Mississippi), Ascension (Louisiana), Franklin (Louisiana), Rapides (Louisiana)

**Select Products are Compliant for Georgia and parts of Florida**

### FDA Disclaimer

These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease

### Premium 7OH (7-Hydroxymitragynine) Research Products

PURÉ7 is a trusted leader in 7-Hydroxymitragynine (7OH), offering high-purity, lab-tested tablets designed for reliable research applications. We provide fast U.S. shipping, transparent COAs, and consistent potency across every batch. Whether you're searching for 7OH tablets, 7OH wholesale options, or research-grade 7-Hydroxymitragynine, PURÉ7 delivers unmatched quality and integrity.


SSL ENCRYPTED SECURE CHECKOUT

© 2025 getpure7.com All rights reserved.



BALANCE VENTURES, LLC D/B/A PURE7, and MARK WILLIS
CASE NO.:  2:25-cv-01325-MMD-MDC

# EXHIBIT 4
## (True and correct copy of Print247)

LIFE ROOT, LLC V. ALTERAEX, LLC (f/k/a KANNA21, LLC), PURE BALANCE
VENTURES, LLC D/B/A PURE7, and MARK WILLIS
CASE NO.: 2:25-cv-01325-MMD-MDC

< 62    Print247    **+14244786786**

7.7 MB • pdf

11:30 AM

➤ Forwarded

pdf **5ct Display Box.pdf**
12.1 MB • pdf

11:30 AM

Please review carefully and write us approval for production. based on your approval files will go straight to production.

11:30 AM

**+14244786786**
📄 5ct Display Box.pdf

This is perfect    2:49 PM ✓✓

**+14244786786**
📄 clamshell_5ct.pdf

For the clamshells i noticed my website and QR code has been removed from the back

2:50 PM ✓✓

**You**
For the clamshells i noticed my website and QR code has been removed from the back

Let me check and get this done    2:50 PM

Also the flavor is missing from the front

2:50 PM ✓✓



3.25 IN        3.25 IN

300MG        60MG        21+ TO        KEEP OUT
TOTAL        PER TABLET   PURCHASE     OF REACH
                                      OF CHILDREN

PURÉ        PURÉ Max    BLACK ICE FLAVOR
                        PRECISION DOSE

LIFE ROOT, LLC V. ALTERAEX, LLC (f/k/a KANNA21, LLC), PURE BALANCE
VENTURES, LLC D/B/A PURE7, and MARK WILLIS
CASE NO.: 2:25-cv-01325-MMD-MDC

# EXHIBIT 5
(True and correct copy of letter)

LIFE ROOT, LLC V. ALTERAEX, LLC (f/k/a KANNA21, LLC), PURE BALANCE
VENTURES, LLC D/B/A PURE7, and MARK WILLIS
CASE NO.: 2:25-cv-01325-MMD-MDC

Alteraex, LLC
23410 Grand Reserve Dr. STE 501
Katy, Texas 77494

July 02, 2025

## Subject: Exclusive Ownership and Authenticity of Puré7

To: Valued Customers and Suppliers

We appreciate the trust and confidence you place in our company and our products. We are writing today to reaffirm our commitment to excellence and to reassure you of the authenticity and exclusive ownership of a core product in our lineup: Puré7.

We are proud to confirm that Puré7 is a product developed, created, manufactured, marketed, and exclusively owned by Alteraex, LLC. From its inception to its final form, every element of Puré7 reflects our vision, innovation, and strict adherence to quality. It is a proprietary formulation designed with precision and integrity, with your needs at the forefront.

We hold all rights to the Puré7 name, formula, branding, associated intellectual property, and have assigned the exclusive right to sell Puré7 to our affiliate, Pure Balance Ventures, LLC d/b/a Pure7. No other company or individual is authorized to produce, sell, market, or distribute Puré7 in any form. This exclusive control ensures that every unit of Puré7 you receive meets the high standards you expect from us.

If you have any questions regarding the authenticity of Puré7 or encounter any misrepresentation of our product in the marketplace, we encourage you to contact us immediately. Your continued support helps protect the integrity of our brand and ensures we can keep delivering the trusted quality you deserve.

Thank you for your loyalty and partnership. We are honored to be your trusted provider and will continue to work hard to exceed your expectations.

Sincerely,

Brooke Willis
President
Alteraex, LLC

LIFE ROOT, LLC V. ALTERAEX, LLC (f/k/a KANNA21, LLC), PURE BALANCE
VENTURES, LLC D/B/A PURE7, and MARK WILLIS
CASE NO.: 2:25-cv-01325-MMD-MDC

# EXHIBIT 6
## (True and correct copies of holding pages)

| | |
|---|---|
| Document title: | (1) - Let me know if you have any questions! |
| Capture URL: | https://gopure7.com/ |
| Page loaded at (UTC): | Fri, 30 Jan 2026 05:10:28 GMT |
| Capture timestamp (UTC): | Fri, 30 Jan 2026 05:11:04 GMT |
| Capture tool: | 10.77.0 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/142.0.7444.265 Safari/537.36 |
| Operating system: | Linux (Node 22.21.1) |
| PDF length: | 3 |
| Capture ID: | coc4AFYsf6YdMWQZd7TJEg |
| Display Name: | amoretto |

PDF REFERENCE #:    c9M6JvW277RtKtSqfPDmTy

GoDaddy - Create professional logos quickly with AI and no design skills needed.    Start Creating

# GO PURE 7

# Launching Soon

## Contact Us

### Drop us a line!

Name

Email*

Message

**Go Pure 7**

Let me know if you have any questions!

I have a question

No, thanks

Launching Soon

## Contact Us

Drop us a line!

Name

Email*

Message

☐ Sign up for our email list for updates, promotions, and more.

SEND

This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.

**Go Pure 7**

Let me know if you have any questions!

I have a question

No, thanks

Powered by

GoDaddy Airo

Copyright © 2025 Go Pure 7 - All Rights Reserved.

Document title: (1) - Let me know if you have any questions!
Capture URL: https://gopure7.com/
Capture timestamp (UTC): Fri, 30 Jan 2026 05:11:04 GMT

🔒 PageVault

| | |
|---|---|
| Document title: | Coming Soon |
| Capture URL: | https://therealpure7.com/ |
| Page loaded at (UTC): | Tue, 22 Jul 2025 01:46:58 GMT |
| Capture timestamp (UTC): | Tue, 22 Jul 2025 01:47:24 GMT |
| Capture tool: | 10.58.0 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/138.0.7204.97 Safari/537.36 |
| Operating system: | Linux (Node 22.17.0) |
| PDF length: | 3 |
| Capture ID: | 1Wgc3dHAeyshf77kHwayBQ |
| Display Name: | cmendez |

PDF REFERENCE #:     tZ9J4C56ZGUu3rWM1jA7pQ



therealpure7.com

We're under construction. Please check back for an update soon.

Document title: Coming Soon
Capture URL: https://therealpure7.com/
Capture timestamp (UTC): Tue, 22 Jul 2025 01:47:24 GMT



therealpure7.com

We're under construction. Please check back for an update soon.

Document title: Coming Soon
Capture URL: https://therealpure7.com/
Capture timestamp (UTC): Tue, 22 Jul 2025 01:47:24 GMT

🔒 **Page Vault**

| | |
|---|---|
| Document title: | ERROR: The requested URL could not be retrieved |
| Capture URL: | http://therealpure7.com/ |
| Page loaded at (UTC): | Fri, 30 Jan 2026 05:14:59 GMT |
| Capture timestamp (UTC): | Fri, 30 Jan 2026 05:15:37 GMT |
| Capture tool: | 10.77.0 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/142.0.7444.265 Safari/537.36 |
| Operating system: | Linux (Node 22.21.1) |
| PDF length: | 2 |
| Capture ID: | dUYJ3v22c3NWsZecmdwnCs |
| Display Name: | amoretto |

PDF REFERENCE #:    sgm47t9wqMyqD1fgaKJb9q

# ERROR

## The requested URL could not be retrieved

The following error was encountered while trying to retrieve the URL: http://therealpure7.com/

**Unable to determine IP address from host name "therealpure7.com"**

The DNS server returned:

Name Error: The domain name does not exist.

This means that the cache was not able to resolve the hostname presented in the URL. Check if the address is correct.

Your cache administrator is webmaster.

---

Generated Fri, 30 Jan 2026 05:14:58 GMT by localhost (squid)

Document title: ERROR: The requested URL could not be retrieved
Capture URL: http://therealpure7.com/
Capture timestamp (UTC): Fri, 30 Jan 2026 05:15:37 GMT

Page 1 of 1