**BLACK & WADHAMS**
ALLISON R. SCHMIDT, ESQ.
NV Bar No.: 10743
10777 W. Twain Avenue, Suite 300
Las Vegas, NV 89135
(702) 869-8801
aschmidt@blackwadhams.law

**LELAND SHAFFER LLP**
THOMAS D. LELAND, ESQ. *(Pro Hac Vice)*
AMY M. RODRIGUEZ, ESQ *(Pro Hac Vice)*
8694 E. 28th Avenue
Denver, Colorado 80238
Tel: (303) 961.8072
Fax: (720) 647-3512
Email: Thomas.leland@lelandshaffer.com
Email: Amy.rodriguez@lelandshaffer.com

*Attorneys for Defendants/Counterclaim
Plaintiffs/Third Party Plaintiffs and Intervenor-Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| LIFE ROOT, LLC, a Delaware limited liability company, | Case No.: 2:25-CV-001325-MMD-MDC |
| Plaintiff/Counterclaim Defendant, | |
| vs. | **DEFENDANTS/COUNTERCLAIM PLAINTIFFS' FIRST AMENDED COUNTERCLAIMS AGAINST LIFE ROOT, LLC AND THIRD PARTY CLAIMS AGAINST ALEXANDER ROCHFORD** |
| ALTERAEX, LLC (f/k/a KANNA21, LLC), a Texas limited liability company, PURE BALANCE VENTURES, LLC D/B/A PURÉ7, a Texas limited liability company, and MARK WILLIS, an individual, | |
| Defendants/Counterclaim Plaintiffs, | |
| ALTERAEX, LLC (f/k/a KANNA21, LLC), a Texas limited liability company, PURE BALANCE VENTURES, LLC D/B/A PURÉ7, a Texas limited liability company, and MARK WILLIS, an individual, | |

1

Third-Party Plaintiffs,

vs.

ALEXANDER ROCHFORD,

Third-Party Defendant,

SUNFLOWER WELLNESS, INC., a Texas Corporation,

Intervenor-Plaintiff,

vs.

ALEXANDER ROCHFORD AND LIFE ROOT, LLC, a Delaware limited liability company,

Intervenor-Defendants.

Defendants, Counterclaim Plaintiffs, and Third Party Plaintiffs Alteraex, LLC f/k/a Kanna21, LLC ("Kanna21"), Pure Balance Ventures, LLC d/b/a Puré7 ("Pure Balance"), and Mark Willis ("Willis") ("Counterclaim Plaintiffs" and/or "Third Party Plaintiffs") respectfully submit these First Amended Counterclaims against Plaintiff and Counterclaim Defendant Life Root LLC ("Life Root"), and pursuant to Fed. R. Civ. P. 14(a) submits these Third Party Claims against Third Party Defendant Alexander Rochford ("Rochford").

**PARTIES**

1.     Defendant/Counterclaim Plaintiff/Third Party Plaintiff Kanna21 is a Texas limited liability company with its principal place of business in Harris County, Texas, at 23410 Grand Reserve Drive, #501, Katy, TX 77494.

2

2.      Defendant/Counterclaim Plaintiff/Third Party Plaintiff Pure Balance, LLC d/b/a Puré7 ("Pure Balance") is a Texas limited liability company with its principal place of business at 5430 Windswept Lane, Houston, TX 77056.

3.      Defendant/Counterclaim Plaintiff/Third Party Plaintiff Mark Willis ("Willis") is an individual who is a resident of Puerto Rico.

4.      Intervenor Plaintiff Sunflower Wellness, Inc. ("Sunflower") is a Texas corporation with its principal place of business in Harris County, Texas, at 23410 Grand Reserve Drive, #501, Katy, TX 77494.

5.      Plaintiff/Counterclaim Defendant/Intervenor Defendant/Third Party Defendant Life Root LLC ("Life Root") is a Delaware limited liability company with its principal place of business in Harris County, Texas.  The registered agent is Republic Registered Agent LLC and the registered office in the state of Delaware is 254 Chapman Road, Ste 209, Newark, DE 19702.  Life Root has answered and appeared herein.

6.      Intervenor Defendant/Third Party Defendant Alexander Rochford ("Rochford") is an individual who is a resident of Texas.

**JURISDICTION**

7.       Life Root initiated this action with its Complaint, and then filed its First Amended Complaint on February 10, 2026 against Kanna21, Pure Balance, and Willis ("Counterclaim Plaintiffs/Third Party Plaintiffs").  (ECF No. 72.)

8.      Counterclaim Plaintiffs/Third Party Plaintiffs' counterclaims are for trademark infringement arising under the Lanham Act 15 U.S.C. § 1115, *et seq.* as well as claims relating to the ownership of Life Root and the Puré7 Trademark.

9.  The Court has original subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. §§ 1331 and 1338 because one of the primary issues in the case involves a federal question of trademark infringement.  The Court has supplemental jurisdiction over the non-federal claims pursuant to 28 U.S.C. § 1367(a) because the non-federal claims are related to the federal claims such that they form part of the same case or controversy.

10.  Counterclaim Plaintiffs/Third Party Plaintiffs' joinder of Rochford to their claims for declaratory relief and claims arising out of the same transaction and series of events and common questions of law and fact are authorized by Fed. R. Civ. P. 20 (a)(2).  The Court granted Counterclaim Plaintiffs' Motion for Joinder of Rochford pursuant to Fed. R. Civ. P. 20 on March 27, 2026.  (ECF No. 88.)  The Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

11.  Fed. R. Civ. P. 18(a) authorizes Counterclaim Plaintiffs/Third Party Plaintiffs to bring as independent or alternative claims against Rochford. The Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

12.  The Court may exercise personal jurisdiction over Life Root and Rochford because Life Root and Rochford purposefully directed Life Root's activities towards the State of Nevada, including the advertisement, offering for sale, and sale of goods to consumers in Nevada.

13.  The Court has the authority to grant the declaratory relief requested herein under the Declaratory Judgment Act and the Court's inherent equitable powers. *See* 28 U.S.C. § 2201, 2201; *see also* Fed. R. Civ. P. 57.

14.  Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Counterclaim Plaintiffs/Third Party Plaintiffs' claims occurred in this judicial district. Pursuant to LR IA 1-6, venue lies in the unofficial Southern Division of this judicial district.

## FACTUAL ALLEGATIONS

**A.    Kanna21 is an herbal supplement company managed by Mark Willis and his daughter Brooke, who invited Alexander Rochford to work with them to develop a brand relating to kratom.**

15.    Kanna21 is a Texas limited liability company formed in January 2023.

16.    Kanna21 is a supplier of herbal supplements which contain 7-Hydroxyumitragyne ("7OH"), a chemical compound found in the Mitragyna speciosa, which is commonly known as kratom.

17.    Kanna21 has been a 7OH supplier since May of 2024.

18.    Kanna21 either sells 7OH powder in its raw form, or in tablet form once the 7OH powder has been forwarded to a processor where it is pressed into tabs.

19.    The finished tabs are then either shipped to Kanna21's customers or, as in this case, the processor transfers the finished tabs to its internal packaging and shipping department.

20.    In May and June of 2024, Kanna21 began an effort to establish its own retail branding for the 7OH tabs it was already supplying on a wholesale basis.

21.    As part of this effort, Mr. Willis reached out to Rochford, with whom Mr. Willis had a prior business relationship involving a failed project in Africa, to see if Rochford was interested in helping establish an in-house retail brand for the Kanna21 7OH tabs.

22.    Rochford was extremely excited about the opportunity and started to learn about the 7OH and kratom business — a business with which he was completely unfamiliar — from Mr. Willis.

23.    In June of 2024, Mr. Willis introduced Ms. Willis to Mr. Rochford to assist on Kanna21's project developing a 7OH brand.

**B.      Rochford and Willis agreed to set up a new business, Life Root, to sell the Puré7 product.**

24.      Although Life Root does not acknowledge it, from the beginning the Parties agreed that this would be an 80/20 deal, with Kanna21 or a different entity owned by Sunflower (Kanna21's parent company) being the 80% owner of the project and Rochford with a 20% stake.

25.      Because Kanna21 was supplying other retail brands with 7OH at the time, however, it did not want to publicize its entry into the retail market.

26.      Accordingly, rather than take an immediate interest in Life Root, Rochford and Mr. Willis agreed to a no-cost option for Sunflower (Kanna21's parent company) to purchase up to 80% of the new business.

27.      This amount was diluted down to Sunflower taking a 73% stake in the business based on Rochford bringing in his brother and another investor as equity owners, which he did only with Mr. Willis's permission.  The 7% equity came from Sunflower's 80% interest.

**C.      Rochford and the Willises work together on the design of the Puré7 trademark and Rochford acts as Kanna21's agent with respect to the design of the brand.**

28.      In its Amended Complaint, Life Root claims that the Puré7 mark "was developed solely by Rochford."  (ECF No. 72 ¶ 27.)  This is false.

29.      Between mid-June and early August of 2024, Rochford was in constant communication with the Willises and Rob Miller —General Counsel of Kanna21 and all the Sunflower-owned businesses — regarding the design of the Puré7 trademark and product packaging.

30.      Text messages between the Willises, Miller, and Rochford show that Rochford was largely taking direction from the Willises and Miller concerning the Puré7 brand, and that these individuals either came up with or approved the most important aspects of the Puré7 design.

31. Specifically, the messages exchanged between June and September 2024 show the following:

- The Puré7 name was first suggested by Ms. Willis, not Rochford;

- Ms. Willis came up with the color scheme for the mark, which Rochford changed at her request;

- The original design of the Puré7 mark contained a "K21" placard for Kanna21;

- Ms. Willis approved the final design with agreement from Mr. Willis and Miller;

- Rochford acknowledged that the Puré7 mark was a collaborative effort in which he was following directions from the Willises and does not assert authority or ownership; and

- Rochford sent the Willises the www.getPuré7.com website link to get their feedback and checks in with the Willises concerning the website designs.

32. As these communications make clear, Rochford did not "solely" develop the Puré7 trademark. Indeed, he did not even come up with the Puré7 name — Ms. Willis did.

33. Further, Rochford was being directed by the Willises, who came up with the most important aspects of the mark.

34. At most, the development of the mark was a collaborative effort between Rochford and Kanna21 while Rochford was acting as an agent of Kanna21.

**D. Miller forms Life Root based on Rochford's agreement that Sunflower would have a no-cost option for a 73% ownership interest in the company.**

35. On August 5, 2024, Miller sent Rochford an email which outlined the principal terms of the agreement on ownership of the company which would eventually become Life Root, specifying that Sunflower, Kanna21's parent company, would have an option to purchase 73% of Life Root, and a right to 73% of a profits interest until it exercised its option.

36. Miller formed Life Root on August 27, 2024 with Rochford and his father as 50/50 owners with Rochford's agreement that Sunflower would have a no-cost option to purchase up to 73% of Life Root.

37. Rochford did not object to these ownership percentages or to the option and agreed with these ownership percentages and the no-cost option. Based on this agreement, Miller formed Life Root with the Delaware Secretary of State on August 27, 2024.

38. On information and belief, Rochford is the sole manager and owner of Life Root and is currently directing the activities of Life Root.

**E. Rochford becomes an independent contractor of Kanna21 to run the Puré7 business.**

39. After the creation of the Puré7 brand, which included the logo and packaging for the herbal supplements, Rochford was eager to "finalize a deal on how my role will function in the brand …"

40. On July 16, 2024, Rochford followed up asking when the brand would be launched and reiterated that he wanted to "finalize my role and a equity percentage for myself..."

41. On October 4, 2024, Kanna21 and Rochford entered into an Independent Contractor Agreement with an effective date of September 1, 2024, under which Kanna21 paid Rochford $1,250 per week to work with Kanna21 running Life Root and selling Puré7.

42. This was in addition to the 27% ownership interest held by Rochford and his investors in Life Root.

43. Under this arrangement, Kanna21 supplied 7OH to a third-party packaging company, which pressed the 7OH into tabs and then packaged with the Puré7 logo and sent directly to customers identified by Rochford.

44. Life Root agreed to pay Kanna21's invoices for 7OH tabs under the terms set forth in Kanna21's invoices.

45. To get Life Root's business started, Kanna21 fronted it over 2 million tabs of Puré7 worth $2,009,887.43.

46. After Rochford agreed to an Independent Contractor Agreement with Kanna21 with an effective date of September 1, 2024, the Parties proceeded with their agreed business, with Kanna21 supplying 7OH to the third-party processing company, which then pressed and packaged the tabs with the Puré7 branding.

47. The processor then sent the packaged and branded final product directly to customers as directed by Rochford and Life Root.

48. Rochford was very enthusiastic about the arrangement and his role and also freely acknowledged that the venture was Mr. Willis's idea and that he had been invited to participate:

- "Good morning, happy Monday!!  I'm ready to work this week and kick ass."

- "Also I am very appreciative for the opportunity you've given me.  Thank you for calling me and giving me the opportunity with the brand, and also to work with you and collaborate, even after the issues with [Africa]."

- "I am more than happy to be working with you and I see the value in projects you're doing and am not only completely loyal to your cause but also willing to do anything within my power to help.  I actually see a ton of value in what we're doing building out the brands mixed with what you're doing on the chemistry side.  I think this is an unstoppable recipe."

- "I just want you to know how appreciative I am when you backed me up during that entire Nigel situation and for everything else you have done for me and that if ever there was a conflict of interest for whatever reason I would have your back 100% no matter how much money was on the line.  I don't care about money, I respect honor and loyalty much more.  Genuinely thank you Mark."

9

49. During all this time, Rochford has always agreed that Sunflower had the majority ownership rights to the company which eventually became Life Root. For example, when Rochford wanted to bring in an equity investor, Rochford asked Mr. Willis's permission.

50. In various conversations with Ms. Willis, Rochford confirmed that the Puré7 brand was the Willises' idea and his role was to assist Kanna21 with the brand.

**F.      Mr. Willis exercises Sunflower's option and Rochford steals the business.**

51. Rochford and Kanna21 proceeded under the Independent Contractor Agreement through the end of 2024 and into 2025.

52. As set forth above, to get Life Root's business started, Kanna21 fronted it several million tabs of Puré7 worth $2,009,887.43.

53. When supplying raw 7OH, Kanna21 typically requires half of the payment up front and then the remaining half on delivery of the product. Giving Life Root such a large amount of 7OH without requiring payment up front or on delivery was part of Kanna21's capital contribution to Life Root.

54. In addition, Kanna21 provided several high-level employees to Life Root at Kanna21's expense, including Ethan Thomas, who acted as Life Root's comptroller, and Brian Reina, who acted as Life Root's Vice President of Sales. Mr. Thomas and Mr. Reina were paid by Kanna21 to work for Life Root in these capacities. These services were also part of Kanna21's capital contributions to Life Root.

55. For months, the arrangement worked smoothly and Rochford began setting up operational systems, in collaboration with Ms. Willis, developed new packaging, designs, product lines, pricing strategies, sales strategies and other operational related activities under the agreed structure.

56. On February 28, 2025, Rochford and Ms. Willis had a meeting in which Rochford affirmed that he reported to her on all sales-related matters and they would collaborate on operations, branding, and marketing, and Ms. Willis continued to report to Mr. Willis. In this discussion, Rochford stated that he knew he had 20% equity in the Puré7 brand.

57. On April 30, 2025, Mr. Willis emailed Rochford to exercise Sunflower's option, writing that he wanted "to make certain we are all on the same page regarding some immediate initiatives for PURÉ7 … Let's get the Operating Agreement for Puré7 cleaned up with the option converted."

58. Soon thereafter, Rochford began ignoring Mr. Willis's calls and texts.

59. On June 3, 2025, Mr. Willis and Rochford had an altercation in which Rochford accused Mr. Willis of raising his voice when encouraging Rochford to keep orders going out.

60. In addition, Kanna21 learned that Rochford was telling its customers that he alone developed the Puré7 brand and product and that he alone was the owner of Life Root.

61. In late June of 2025, Rochford locked the Willises out of several group chats having to do with the Puré7 brand and stopped communicating with them about the business.

62. On June 25, 2025, Rochford removed Ms. Willis from the Life Root sales chat, disabled access to online banking and accounting software, removed building access, and attempted to induce the comptroller to terminate his position and join Life Root directly.

63. On June 27, 2025, Kanna21's outside counsel sent written notice to Rochford's counsel terminating the Independent Contractor Agreement.

64. Kanna21's termination letter stated that it was the rightful owner of the trade name and retained the exclusive right and authority to market and sell its products.

65.     Kanna21 further advised that despite the termination of the Agreement, the "work-for-hire" provision, non-solicitation provision, confidentiality provision, and dispute-resolution provision requiring mandatory binding arbitration to take place in Denver, Colorado under Colorado law remained operative and fully enforceable.

66.     After several weeks of radio silence from Rochford, on June 30, 2025, he sent a text in which he accused Mr. Willis of "threatening like you want a fight.  If you want to go ahead and throw everything on the table and drag everyone into a court room let's rock and roll.  I have been quiet for a reason.  Either be polite and let's work out a deal or let's get ready to rumble."

67.     During this time, Rochford continued to misrepresent to the market that he was the sole developer of the Puré7 product and that he alone owned the business.

68.     Rochford has claimed that Mr. Willis's April 30, 2024, email did not exercise the option.

69.     In an abundance of caution Sunflower, exercised its option again by a letter dated November 24, 2025.

**G.     Kanna21 initiated an arbitration in Colorado which is stayed pending a judicial determination of the ownership of Life Root.**

70.     On July 30, 2025, Kanna21 initiated the mandatory mediation and arbitration process by letter to counsel.

71.     The Arbitrator found that Willis and Rochford initially agreed that Kanna21 or another Sunflower owned entity would own 80% of the company and Rochford would own 20%, with the agreement that Kanna21 or a related entity would maintain a profits participation until it exercised its option to convert the profits interest to an ownership interest for nominal consideration.  (Amended Order re Arbitrability, Exhibit 1 hereto at 2.)

12

72.    The Arbitrator found the structure was modified in August 2024 to Sunflower holding a 73% interest in Life Root and Rochford, his brother, and another investor would own the remaining 27% collectively. (*Id.*)

73.    The Arbitrator found that Kanna21 capitalized Life Root through $2 million in product that was repayable as the product was sold, in addition to time, skill, and labor invested by Kanna21. (*Id.* at 3.)

74.    The Arbitrator found that Kanna21 and Rochford worked together between June and September 2024 to create the design, packaging, and name of the Puré7 product.  (*Id.* at 3.)

75.    The Arbitrator found that Rochford's scope of services performed under the ICA included the retail sale of 7OH and new 7OH delivery systems, ruling that disputes which occurred during the pendency of the ICA must be resolved via binding arbitration. (*Id.* at 4-5.)

76.    The Arbitrator found, however, that the issues concerning who owned Life Root and the Puré7 brand arose before the effective date of the ICA, and therefore must be decided by a court.  (*Id.*)

77.    The Arbitrator ordered it would not rule on motions for injunctive relief, sequestration of funds, and the appointment of a receiver and these were properly before the Nevada Court.  (*Id*. at 5.)

78.    The Arbitrator stayed the arbitration "pending a judicial determination of the ownership of Life Root."  (*Id.*)

**FIRST CLAIM FOR RELIEF**
**Declaratory Judgment – Ownership of Life Root**
**(Counterclaim Plaintiffs against Life Root)**

79.    Counterclaim Plaintiffs incorporate all previous allegations.

80.    Rochford claims that he is the majority owner and sole manager of Life Root.

13

81. Rochford and Mr. Willis agreed that Rochford would be brought in to assist Kanna21 with development of the retail brand and that he would help manage the company that eventually became Life Root. Rochford and Mr. Willis agreed that in exchange for his services, he would be granted a 20% equity interest in the new entity, which eventually became Life Root.

82. Because Mr. Willis did not want to publicize Kanna21's entry into the retail market, he and Rochford agreed that Sunflower (Kanna21's parent company) would have a no-cost option to purchase up to 80% of the new company, which became Life Root.

83. This was eventually changed to a 73% equity interest for Sunflower 27% for Rochford and his investors. The 7% dilution of Sunflower's interest for Rochford's investors was part of Kanna21's capital contribution to the business.

84. Rochford and Mr. Miller agreed that while at first Rochford would be the sole record owner of Life Root, Sunflower would retain a no-cost option to purchase a 73% interest and would have a profits interest of 73% in the new company until it exercised that option.

85. Mr. Willis exercised Sunflower's no-cost option on April 30, 2025. Sunflower reiterated it was exercising its option on November 21, 2025.

86. These agreements are binding and enforceable contracts under Delaware law — which applies to Life Root as a Delaware LLC. The Delaware LLC Act, Del. Code 6-18-100 *et seq*, fills in the other terms of the operating agreement between the Parties. Under the Delaware LLC Act, Del. Code. 6-18-402, management is vested in the LLC's members in proportion to their profit-sharing interests, and decisions by members owning more than 50% of those interests control the LLC.

87. Here, Rochford and Kanna21 agreed that Sunflower would have a no-cost option for a majority profits interest in the entity which eventually became Life Root, which Sunflower

has exercised.  Accordingly, under Delaware law, Sunflower is the majority owner of Life Root and controls the company.

88.    An actual controversy exists between the Parties because Life Root has falsely assumed control of Life Root and has falsely claimed that Rochford is the majority owner of the company.

89.    Under Fed. R. Civ. P. 57, the Court has the power to declare the rights and status of legal relationships between the Parties.

90.    Counterclaim Plaintiffs respectfully request a declaration that Sunflower is the majority owner of Life Root under Delaware law and therefore is the controlling manager of Life Root.

**SECOND CLAIM FOR RELIEF**
**Declaratory Judgment – Ownership of Puré7 Trademark**
**(Counterclaim Plaintiffs/Third Party Plaintiffs against Life Root and Rochford)**

91.    Counterclaim Plaintiffs incorporate all previous allegations.

92.    Life Root and Kanna21 claim that Rochford is the sole developer of the Puré7 trademark and brand. Kanna21 denies that Rochford solely developed the Puré7 mark and brand.

93.    Between June and September of 2024, Rochford acted as Kanna21's agent with respect to the development of the Puré7 brand and trademark.

94.    As Kanna21's agent, Rochford owed fiduciary obligations to Kanna21 and all actions he took with respect to the Puré7 trademark — including any use of the mark in commerce — was performed on behalf of and for the benefit of Kanna21.

95.    In the alternative, Rochford was working on behalf of a joint venture — Life Root — between himself and Sunflower.  As a joint venturer, Rochford owed fiduciary obligations to

15

the joint venture, and all actions he took with respect to the Puré7 trademark — including any use of the mark in commerce — were performed on behalf of and for the benefit of the joint venture.

96.    An actual controversy exists between the Parties because Life Root has falsely assumed ownership over the Puré7 mark and brand, which is rightfully owned by Kanna21 or by the Parties' joint venture.

97.    Under Fed. R. Civ. P. 57, the Court has the power to declare the rights and status of legal relationships between the Parties.

98.    Kanna21 requests a declaration that it is the owner of the Puré7 mark.

99.    Counterclaim Plaintiffs request a declaration that any assignment by Rochford to Life Root of the ownership of the Puré7 mark is invalid.

**THIRD CLAIM FOR RELIEF**
**Infringement of Puré7 Trademark (Lanham Act § 15 U.S.C. 1125)**
**(Kanna21 against Life Root and Rochford)**

100.    Counterclaim Plaintiffs incorporate all previous allegations.

101.    Kanna21 owns the Puré7 trademark as set forth above.

102.    Life Root, at Rochford's direction, has infringed on Kanna21's Puré7 trademark by offering inferior goods for sale, causing consumer confusion and mistake as to the origin and quality of the Puré7 trademark, and deceiving the public into believing Life Root's Puré7 products are affiliated with Kanna21's Puré7 trademark.

103.    The Puré7 trademark was developed to reflect the ultra-pure nature of Kanna21's product. On information and belief, at Rochford's direction, Life Root is currently being supplied by another supplier of 7OH and offering Puré7 branded products at a 25% to 35% discount to the price Kanna21 and Pure Balance charge for Puré7 branded products. The replacement product

16

does not reflect the purity of the Kanna21 product or the Puré7 brand and the significant price discount further damages the Puré7 brand as a premium product.

104.    In addition, Rochford and Life Root have apparently changed suppliers and are selling a 7OH product which tastes and smells like gasoline and which contains several toxic chemicals which are not safe for human consumption.    Specifically, testing in a Gas Chromatography—Mass Spectrometry machine shows that the Rochford/Life Root product contains the following toxic chemicals:

- Toluene at 4.844 ppm;
- Methyl Formate;
- Ethylbenzene;
- 2,3-Dimethyloctane;
- 4-Hydroxy-4-methyl-2-pentanone;
- Decane;
- Undecane; and
- Mesitylene;

 None of these toxins are acceptable in food or herbal supplements at any level because they pose a threat to the health of anyone who ingests them.

105.    The noxious smell and taste of Rochford's and Life Root's product is evident to customers as well as shown by videos of customers complaining about the smell and taste of the Rochford/Life Root counterfeit Puré7 product.    In addition, Kanna21 has learned that, at Rochford's direction, Life Root is selling 7OH under the Puré7 brand in Florida, where 7OH herbal supplements are illegal.

106.    Accordingly, Rochford's and Life Root's continued use of the Puré7 brand to sell an inferior product harms Kanna21's reputation as the supposed supplier of the Puré7 product and dilutes the Kanna21 Puré7 trademark.

107.    Further, Rochford's and Life Root's continued use of the Puré7 brand to sell an inferior product in jurisdictions in which 7OH supplements are illegal is causing customer confusion.  For example, the videos of customers complaining about the counterfeit product's taste and smell incorrectly think that the product was provided by Kanna21.  In addition, Kanna21 has learned of other customers who mistakenly think that Puré7 is owned by Life Root, due to Rochford's many misrepresentations to the marketplace to that effect.

108.    Pursuant to 15 U.S.C. § 1117, Kanna21 is entitled to recover from Life Root and Rochford any profits Life Root and Rochford have obtained from selling the goods bearing the Puré7 trademark, Kanna21's actual damages, costs of this action.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Kanna21 and Mr. Willis against Life Root and Rochford)**

109.    Counterclaim Plaintiffs incorporate all previous allegations.

110.    Kanna21 and Mr. Willis conferred a benefit on Life Root and Rochford in the form of advanced product, knowledge, connections, seconded employees, and other benefits.

111.    Life Root and Rochford have appreciated those benefits and taken advantage of those benefits.

112.    Life Root and Rochford have accepted and retained those benefits.

113.    It would be unjust for Life Root and Rochford to retain the benefits conferred by Kanna21 and Mr. Willis.

18

114. Kanna21 and Willis respectfully asks for an order requiring Life Root and Rochford to pay Kanna21 for the benefits conferred, including the $1.141 million in unpaid product which Kanna21 provided to Life Root to get the business up and running.

**FIFTH CLAIM FOR RELIEF**
**Constructive Trust**
**(Kanna21 against Life Root and Rochford)**

115. Counterclaim Plaintiffs incorporate all previous allegations.

116. Life Root and Rochford are currently refusing to pay approximately $1.14 million to Kanna21 for 7OH Kanna21 fronted to Life Root as part of its capital contribution to the business.

117. On information and belief, Life Root, at Rochford's direction, has sold the 7OH and has collected significant money for sale of this product, which it has used to operate Life Root rather than paying Kanna21. Further, Life Root and Rochford are dissipating this money and wasting it on extravagant gifts to clients, such as a $20,000.00 Rolex watch.

118. Life Root and Rochford are unfairly holding this money and dissipating it on litigation and operating expenses rather than paying Kanna21.

119. Kanna21 asks for a constructive trust to preserve these assets pending a hearing on the merits.

120. All the factors for a preliminary injunction are present:

    i. Kanna21 is likely to prevail in showing that Life Root and Rochford owe it approximately $1.14 million for 7OH;

    ii. Life Root and Rochford are dissipating this money and will be unable to satisfy a constructive trust or provide an accounting of this money, thereby depriving Kanna21 of equitable remedies, which constitutes irreparable harm;

    iii. The balance of equities favors granting Kanna21 a constructive trust over the money it is owed by Life Root and Rochford;

    iv. The public interest is served by a constructive trust; and

19

v.    A constructive trust will preserve the status quo pending a hearing on the merits.

121.    For all these reasons, Kanna21 asks that the Court impose a constructive trust on the amounts Life Root and Rochford owe to Kanna21 and order that Life Root deposit $1,141,687.43 in an interest-bearing escrow account (with terms acceptable to the Parties) pending resolution of this issue by the Court and grant Kanna21 an accounting of all Life Root's finances.

**SIXTH CLAIM FOR RELIEF**
**Preliminary and Permanent Injunction**
**(Counterclaim Plaintiffs against Life Root and Rochford)**

122.    Counterclaim Plaintiffs incorporate all previous allegations.

123.    Rochford's and Life Root's use of the Puré7 brand and trademark is confusingly similar to Kanna21's use.

124.    The Puré7 brand was developed to reflect the ultra-pure nature of Kanna21's product.  On information and belief, at Rochford's direction, Life Root is currently being supplied by another supplier of 7OH and offering Puré7 branded products at a 25% to 35% discount to the price Kanna21 and Pure Balance charge for Puré7 branded products.  The replacement product does not reflect the purity of the Kanna21 product or the Puré7 brand and the significant price discount further damages the Puré7 brand as a premium product.

125.    Accordingly, Rochford's and Life Root's continued use of the Puré7 brand to promote an inferior product harms Kanna21's reputation as the supposed supplier of the Puré7 product.

126.    Further, Rochford's and Life Root's continued misrepresentations to the marketplace that Rochford and Life Root are the exclusive creators and owners of the Puré7 brand and that Rochford is the sole owner of Life Root are harming Kanna21's reputation as a leader of this industry.

127.    Kanna21 is likely to show that it is the owner of the Puré7 brand and that Sunflower is the majority controlling owner of Life Root.

128.    As set forth above, Rochford and Life Root are selling a 7OH product which tastes and smells like gasoline and which contains several toxic chemicals which are not safe for human consumption.  Specifically, testing in a Gas Chromatography—Mass Spectrometry machine shows that the Rochford/Life Root product contains the following toxic chemicals:

- Toluene at 4.844 ppm;

- Methyl Formate;

- Ethylbenzene;

- 2,3-Dimethyloctane;

- 4-Hydroxy-4-methyl-2-pentanone;

- Decane;

- Undecane; and

- Mesitylene;

None of these toxins are acceptable in food or herbal supplements at any level because they pose a threat to the health of anyone who ingests them.

129.    The noxious smell and taste of Rochford's and Life Root's product is evident to customers as well as shown by videos of customers complaining about the smell and taste of the Rochford/Life Root counterfeit Puré7 product, which also show customer confusion as they mistakenly think that the product is being supplied by Kanna21.  In addition, Kanna21 has learned that, at Rochford's direction, Life Root is selling 7OH under the Puré7 brand in Florida, where 7OH herbal supplements are illegal.

21

130. Life Root selling counterfeit Puré7 in jurisdictions in which the product is illegal is causing irreparable harm to Kanna21 because it has lost control of its brand and is suffering harm to its goodwill and reputation as a result of Rochford's and Life Root's reckless sales practices and misrepresentations.

131. The balance of equities favors a preliminary injunction while the Parties adjudicate their disputes.

132. A preliminary and permanent injunction will serve the public interest and preserve the status quo pending a decision on the merits.

133. Pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65, Life Root and Rochford should be preliminarily and permanently enjoined from using the Puré7 brand and trademark.

**PRAYER FOR RELIEF**

For the reasons set forth above, Counterclaim Plaintiffs/Third Party Plaintiffs respectfully ask that the Court enter the following relief:

- A declaratory judgment that Kanna21 is the owner of the Puré7 brand and trademark;

- A declaratory judgment that Sunflower Wellness, Inc. (Kanna21's parent company) is the 73% owner of Life Root;

- Imposition of a constructive trust requiring that Life Root deposit $1,141,687.43 in an interest-bearing escrow account to be disbursed in accordance with the Court's final order in this matter and an accounting of Life Root's finances;

- An order requiring that Life Root and Rochford pay Kanna21 for the benefits conferred, including the $1.141 million in unpaid product which Kanna21 provided to Life Root to get the business up and running.

- A preliminary and permanent injunction barring Life Root and Rochford from using the Puré7 brand and mark.

- Damages against Life Root and Rochford in an amount to be determined at trial.

**JURY DEMAND**

Counterclaim Plaintiffs/Third Party Plaintiffs demand a jury trial on all issues so triable.

Dated: April 17, 2026

Respectfully submitted,

**LELAND SHAFFER LLP**

*/s/ Thomas D. Leland*
THOMAS D. LELAND, ESQ.(PHV)
AMY M. RODRIGUEZ, ESQ. (PHV)
8694 E. 28th Avenue
Denver, Colorado 80238
Tel:  (303) 961-8072
Fax:  (720) 647-3512
Email:  Thomas.leland@lelandshaffer.com
Email: Amy.rodriguez@lelandshaffer.com

and

**BLACK & WADHAMS**

*/s/ Allison R. Schmidt*
ALLISON R. SCHMIDT, ESQ.
NV Bar No.: 10743
10777 W. Twain Avenue, Suite 300
Las Vegas, NV 89135
Tel:  (702) 869-8801
Fax: (702) 869-2669
Email: aschmidt@blackwadhams.law

*Attorneys for Defendants/Counterclaim Plaintiffs/Third Party Plaintiffs, and Intervenor-Plaintiff*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I hereby certify that on April 17, 2026, I served the above and foregoing **DEFENDANTS/COUNTERCLAIM PLAINTIFFS' FIRST AMENDED COUNTERCLAIMS AGAINST LIFE ROOT, LLC AND THIRD PARTY CLAIMS AGAINST ALEXANDER ROCHFORD** on the parties in this matter vis a vis this Court's CM/ECF filing system to:

**DICKINSON WRIGHT PLLC**

John L. Krieger, Esq.
Gregory R. Gemignani, Esq.
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, Nevada 89169
Tel:  (702) 550-4439
Fax: (844) 670-6009
Email: jkrieger@dickinsonwright.com
Email: ggemignani@dickinsonwright.com

**LOOPER GOODWINE P.C.**

Stephen W. Abbott, Esq. (pro hac vice)
1300 Post Oak Blvd., Suite 750
Houston, Texas 77056
Tel: (713) 335-8883
Fax: (713) 335-8601
Email: sabbott@loopergoodwine.com

*Attorneys for Plaintiff Life Root, LLC*

                                        */s/. Allison R. Schmidt*

24