# EXHIBIT 1



E-SERVICE
77730097
Nov 07 2025
01:20PM
File & ServeXpress

Judicial Arbiter Group, Inc.
1601 Blake Street, Suite 500
Denver, Colorado 80202
Phone:  303-572-1919
Facsimile:  303-571-1115

In Re the Arbitration of:

**Kanna21, LLC**

       Claimant,

v.

**Alex Rochford** and **Life Root LLC**

       Respondents.

David H. Goldberg - Arbiter

▲    COURT USE ONLY    ▲

JAG Case No. 2025-1109A

AMENDED ORDER RE: ARBITRABILITY

This matter is before the Arbitrator on the threshold issue of arbitrability. Having reviewed the pleadings, exhibits, testimony of witnesses at hearing, and the arguments of counsel, the Arbitrator finds and concludes as follows:

On July 11, 2025, Alexander Rochford ("Rochford") and Life Root, LLC ("Life Root")[1] filed suit against Pure Balance Ventures, LLC[1] ("Pure Balance"), Mark Willis ("Willis") and other defendants in federal district court in Harris County, Texas, asserting ownership of Life Root and its intellectual property, as well as claims based in tort and contract. On July 23, 2025, Rochford and Life Root sought an emergency *ex parte* temporary restraining order against Alteraex, LLC f/k/a/ Kana21[2] ("Kana21") in federal district court in Clark County, Nevada. Both lawsuits have been stayed pending a determination of arbitrability.

---

[1] Pure Balance Ventures is owned by Sunflower Wellness, LLC, another Willis-owned company.
[2] Kana21 is also owned by Sunflower Wellness, LLC

Kana21 seeks to arbitrate disputes involving the ownership of Life Root and the trademark PURÉ7, as well as claims for intellectual property theft, cybersquatting, business disparagement, defamation, breaches of contract, unfair competition, deceptive trade practices, and tortious interference. Life Root and Rochford deny the Arbitrator has authority to render an award. To the extent the issues are determined to be arbitrable, Kana21 seeks a restraining order as well as the appointment of a receiver and sequestration of funds.

Having listened closely to the testimony presented at hearing on the issue of arbitrability, the Arbitrator finds that Kanna21 was formed in 2023 as a supplier of herbal supplements that contain 7-Hydroxyumitragyne ("7OH"), a chemical compound commonly known as kratom. Kana21 processes or forms the 70H into tablets that are sold to retail customers.

In the spring of 2024, Willis, the principal owner of Kana21, decided to start a retail company to sell a branded 70H product. To this end Willis, contacted Rochford, with whom he had a prior business relationship, to execute on the opportunity. Willis did not want to make the new venture public at that time based on concerns that Kana21's retail customers may react negatively to active competition from the manufacturer and distributor of 70H.

The Arbitrator finds that Willis and Rochford initially agreed that Kana21, Sunflower Wellness, Pure balance or one of the Willis-owned Sunflower entities would own 80% of the new company and Rochford would own 20% of the company. In order to avoid disclosure of the ownership structure the parties agreed that Kana21 or one of its related and/or affiliated entities would maintain a profits participation until it elected to exercise an option to convert the profits interest to an ownership interest for nominal consideration. This structure was modified by the parties in August of 2024 wherein it was agreed that Sunflower would hold a 73% interest in the new company, and Rochard, his brother, and another investor would collectively own 27% of the business.[3] The new

---

[3] Rochford and his father, Paul Rochford, signed an operating agreement in which they each purportedly owned a 50% interest in Life Root. Paul Rochford subsequently transferred his interest to Rochford through an amended and restated operating agreement. The services contemplated by and arising out of the ICA did not include profits participation and ownership of Life Root.

company, called Life Root, was registered with the Delaware Secretary of State's office on August 27, 2024, by Rob Miller, the president and general counsel of Sunflower Wellness.

Life Root was capitalized through $2 million in product from Kana21 that was repayable as the product was sold, as well as the investment of time, skill and labor from the parties. No operating agreement was signed at the time the business was capitalized. The parties worked together between June and September of 2024 to create the design, packaging, and name of the new product, which is called PURÉ7.

The parties dispute the date of first use and ownership of the trademark PURÉ7. What is not in dispute is that The PURÉ7 trademark was developed and first used in commerce before the Independent Contractor Agreement ("ICA") containing the arbitration provision was signed or became effective.

On October 4, 2024, Kana21 and Rochard, in his individual capacity, entered into the ICA dated effective September 1, 2024.  The ICA contemplates the provision of services. Specifically, the agreement provides

> 2. **Services**.  The Contractor agrees to perform the following services at (the "**Services**"):
>
> i.   Vendor identification, vetting, onboarding, and management; and
>
> ii.  Other services as agreed by the parties.

The ICA included the following dispute resolution provision in Paragraph 11(b):

> b.    Binding arbitration shall be conducted in Denver County, Colorado before a single arbitrator appointed in accordance with the applicable rules of the Judicial Arbiter Group or such other arbitration organization as is mutually agreeable to the parties. A party invoking arbitration after the filing of a court action must do so within thirty (30) days of service of the complaint or other pleading initiating the action, or any objection to proceeding in court shall be deemed waived.

Arbitration is a favored method of dispute resolution in Colorado, but parties are not forced to arbitrate disputes they have not agreed to arbitrate. *Lane v. Urgitus*, 145 P.3d 672 (Colo. 2006). An arbitration clause is a contract and must be interpreted in accordance with the plain and ordinary meaning of its terms. *Allen v. Pacheco*, 71 P.3d

3

375 (Colo. 2003). An Arbitrator must compel arbitration unless he or she can say "with positive assurance" that the arbitration clause is not susceptible of any interpretation that encompasses the subject matter of the dispute. *City & County of Dever v. Dist. Court*, 939 P.2d 1353, 1364 (Colo. 1997). Any ambiguities must be found in favor of arbitration. *Id.* When an arbitration clause includes verbiage such as "arising out of" or "relating to," it is broad in scope. *Smith v. Multi-Fin. Sec. Corp.*, 171 P.3 1267 (Colo. App. 2007).

The Arbitrator finds the arbitration clause at issue is a broad arbitration provision and there is a strong presumption of arbitrability. Notwithstanding the foregoing, Respondent argues that this matter is analogous to *Breaker v. Corrosion Control Corp.*, 23 P.3d 1278 (Colo. App. 2001). In *Breaker*, the court was presented with an arbitration provision that largely mirrored the one at issue. The court resolved the issue by focusing on the facts underlying the clause rather than the legal theories asserted.

The Arbitrator agrees that *Breaker* analysis is appropriate in this case. The Arbitrator finds that the factual issues underlying the very formation, capitalization, profits participation, and ownership of Life Root, as well as the PURÉ7 trademark preceded the ICA and were not within the scope of services contemplated in the ICA. These matters are not the type of services contemplated by or agreed to by Rochford or Kana21. As such, those disputes are non-arbitrable and must be decided by the court. The Arbitrator further finds that neither Willis, nor Sunflower Wellness, Pure Balance, Asahi Holdings, or other Willis-related or controlled entity are not parties to the ICA and cannot be compelled to arbitrate disputes with Rochford.

With respect to Rochford's assertion that the ICA's scope is limited to consulting services for Kanna21's wholesale kratom business and did not involve Life Root, the or its operations, the Arbitrator disagrees. There is credible evidence that Rochford's scope of services included the retail sale of 70H and new 70H delivery systems. These services arise out of and relate to the ICA. To the extent claims arose out of or are related to the

4

ICA through the date of the ICA was terminated[4], such disputes must be resolved via binding arbitration.

Based on the limited scope of the arbitration, the Arbitrator will not be ruling on motions for injunctive relief, for sequestration of funds, or the appointment of a receiver. These matters are properly before a court and there are two pending matters in Texas and Nevada.

Finally, damages are an element of every claim for relief that can be asserted in this arbitration. This matter is stayed pending a judicial determination of the ownership of Life Root.

Entered this 7th day of November, 2025.

_____
David H. Goldberg - Arbiter
Judicial Arbiter Group, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of November, 2025, a true and correct copy of the foregoing *Order* was served via electronic filing (*File & ServeXpress)*, addressed to the following:

All Counsel of Record

*Original Signature on File*
Jackie Burt, Administrative Clerk
Judicial Arbiter Group, Inc.

---

[4] The date of termination is in dispute. Rochford contends he terminated the ICA in February 2025. Kana21 argues the ICA was terminated in June 2025. The Arbitrator makes no findings concerning the length of time the ICA was in effect.